(No. 44891.—

(No. 44897.—

(No. 44908.—

(No. 44929.—

WAYNE BRIDGEWATER, Appellee, v. EULALIA HOTZ, Appellant.—HERBERT L. "HUB" STERN, *et al.,* Appellants, v. GRACE MARY STERN, Appellee.— ELMO McCLAIN, Appellant, v. LOIS MILLER, Appellee.—PEOPLE *ex rel.* RICHARD M. COLEMAN, Petitioner, v. RAY W. MacDONALD, County Clerk, *et al.,* Respondents.

*Announced Jan. 13, 1972.—Opinion filed March 30, 1972.*

ROLAND GRIFFITH, State's Attorney, of Edwardsville (BEN ALLEN, Assistant State's Attorney, of counsel), for appellant.

WILLIAM BRANDT, of Madison and DAVID A. EPSTEIN, of Springfield, for appellees.

GOTTLIEB and SCHWARTZ, of Chicago and HERCULES PAUL ZAGORAS, of Waukegan, for appellant.

JACK HOOGASIAN, State Attorney of Waukegan, for appellee.

GOEHL & ADAMS, of Quincy, for appellant.

CHARLES F. MARINO, of Chicago, for petitioner.

WILLIAM A. REDMOND, of Bensonville, for respondent.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

We have consolidated for opinion appeals from judgments of the circuit courts of Madison (Docket No. 44891), Lake (Docket No. 44897), and Adams (Docket No. 44908) counties, and an original action for *mandamus* (Docket No. 44929). The circuit court of Madison County held section 2—26.01 of the Election Code (Ill.Rev.Stat. 1969, ch. 46, par. 2—26.01) invalid, enjoined the county clerk of Madison County from conducting the primary for the nomination of candidates for the offices of members of the county board on February 8, 1972, as provided in section 7—5, and from conducting the election for said offices on April 4, 1972, as provided in section 2—26.01 of the Election Code, ordered the county clerk to conduct the primary on March 21, 1972, the same date fixed for the primary for the nomination of candidates for offices to be voted upon in the general election, and further ordered that the election of members of the county board be conducted at the same time as the general election to be held on November 7, 1972. In actions seeking substantially similar judgments the circuit courts of Lake and Adams Counties denied the relief sought and dismissed the suits.

Following timely notices of appeal to the appellate court for the appropriate districts we allowed motions filed in accordance with our Rule 302(b) (Ill.Rev.Stat. 1971, ch. 110A, par. 302(b)), fixed an expedited schedule for filing briefs, consolidated the cases for oral argument and following oral argument announced our decision. Subsequent to announcement of that decision we allowed a motion for leave to file an original action seeking the issuance of a writ of *mandamus* ordering the circuit court of Du Page County to expunge a decree substantially similar to the decree of the circuit court of Madison

County and ordering the county clerk of Du Page County to hold the primary and election for nomination and election of members of the county board in accordance with the statutes. Because of the brief period of time remaining until February 8, 1972, we ordered an expedited briefing schedule, and following oral argument awarded the writ.

Several statutes are pertinent to this litigation. Section 2 of "An Act relating to the composition and election of county boards in certain counties" (Ill.Rev.Stat. 1969, ch. 34, par. 831 *et seq.*), hereafter called the County Board Act, provides, in part, that in counties having a population of 3,000,000 or less and the township form of government there shall be a county board of not less than 5 nor more than 29 members, who may be elected at large or by county board districts with an equal number of inhabitants. Section 2—26.01 of the Election Code provides that county board members provided for in the County Board Act shall be elected on the first Tuesday in April 1972 (April 4) and one half of the members shall be elected every two years thereafter. To the extent here relevant, section 7—5 of the Election Code provides that a primary for the nomination of officers to be voted for on the first Tuesday in April in any year shall be held on the second Tuesday in February of such year, and that "A primary shall be held on the third Tuesday in March in every year in which officers are to be voted for on the first Tuesday after the first Monday in November of such year, for the nomination of candidates for such offices as are to be voted for at such November election." Section 7—1.01 of the Election Code provides that in any county that has been divided into county board districts in accordance with the County Board Act, the county board may, by resolution, provide that established political parties may nominate candidates for the office of member of the county board by caucus.

By reason of the provisions of section 4—6 of the

Election Code there can be no registration of voters during the 28-day period preceding the primaries to be held on February 8 and March 21, 1972, during the 28-day period preceding the election to be held on April 4, 1972, and during the two-day period following each of the primaries and the election. Section 4—6 also provides "that if by reason of the proximity of any such elections to one another the effect of this provision would be to close registrations for all or any part of the 10 days immediately prior to such 28 day period, the county clerk shall accept, solely for use in the subsequent and not in any intervening election, registrations and transfers of registration within the period from the 28th to the 38th days, both inclusive, prior to such subsequent election ***." As the result of this provision, during the period commencing on February 26, 1972, and ending March 6, 1972, voters may register for the election to be held on April 4, 1972.

Plaintiffs contend that the statutory provisions for the February primary and the April election applicable to counties within the class created by section 832 of the County Board Act are in violation of sections 3 and 4 of article III and section 13 of article IV of the constitution of 1970 which provide:

"ARTICLE III
\* \* \*
SECTION 3. ELECTIONS
All elections shall be free and equal.
SECTION 4. ELECTION LAWS
The General Assembly by law shall define permanent residence for voting purposes, insure secrecy of voting and the integrity of the election process, and facilitate registration and voting by all qualified persons. Laws governing voter registration and conduct of elections shall be general and uniform.
\* \* \*
ARTICLE IV
\* \* \*
SECTION 13. SPECIAL LEGISLATION
The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a

general law is or can be made applicable shall be a matter for judicial determination."

They argue that the effect of the statutes is to create two classes of counties—one class comprised of counties with populations of less than 3,000,000 and the township form of government and the other comprised of Cook County and the counties under commission form of government. They contend that the statutes provide less opportunity for voter registration in the former class than in the latter in that they effect a closing of the registration books for periods of 28 days before the February primary, 18 days before the April election and 2 days after each of these elections in counties of one class while in counties of the other class voter registration is permitted to continue. They point out that in 1972 the period of permissible voter registration will be 50 days less in the first class of counties than in the second. They argue that there are legislative and congressional districts comprised in part of territory lying within both classes of counties, thus effecting discrimination and inequality of opportunity to register between the voters within those districts.

Citing the debates of the Constitutional Convention, plaintiffs contend that the provision in section 4 of article III that laws governing voter registration and conduct of elections be general and uniform is "a new, unprecedented constitutional standard for Illinois election laws, distinct from the continued standard of prohibiting local or special laws." They argue that the presence in the constitution of two separate provisions, each phrased differently, one specifically (article III, section 4) and the other generally (article IV, section 13) applicable to election laws, requires us to hold that they are different standards and that to hold them equivalent would "render the uniformity clause nugatory, or at best redundant." From this, they argue, it follows that the requirement that such laws be "general and uniform" imposes a more stringent standard than does the proscription of "local or special laws" and the test of

reasonableness and validity of classifications is a much stricter one. They argue further that the test of "general and uniform" requires that the reasonableness and validity of a classification requires "affirmative justification by a valid purpose" rather than merely "rational relation to a valid purpose while the local or special laws standard, by contrast, allows a classification to stand if a rational justification is logically possible."

Defendants contend that the regulation of registration of voters and of the holding of primaries and elections is within the power of the General Assembly and the enactment of the legislation of which plaintiffs complain is within the constitutional limitations imposed upon that power.

Sound rules of construction require that in those instances in which this court, prior to the adoption of the constitution of 1970, has defined a term found therein, that it be given the same definition, unless it is clearly apparent that some other meaning was intended. *(Hamer v. Board of Education (1971), 47 Ill.2d 480; American Aberdeen-Angus Breeders' Association v. Fullerton (1927), 325 Ill. 323.)* Our earlier decisions hold that: "Laws are general and uniform when alike in their operation upon all persons in like situations." *(City of Mt. Olive v. Braje (1937), 366 Ill. 132, 135; Bowers v. Glos (1931), 346 Ill. 623.)* In *Mathews v. City of Chicago (1930), 342 Ill. 120, 128,* and in *Latham v. Board of Education (1964), 31 Ill.2d 178, 183,* this court said: "The prohibition contained in section 22 of article 4 of the constitution against the passage of local or special laws in certain enumerated cases does not mean that every law shall affect alike every place and every person in the State but it does mean that it shall operate alike in all places and on all persons in the same condition. When referring to legislation the term 'local' means laws relating to a portion, only, of the territory of the State, and the term 'special,' laws which impose a particular burden or confer a special right, privilege or

immunity upon a portion of the people of the State. *(People v. Wilcox, 237 Ill. 421; People v. Day, 277 id. 543; People v. Diekmann, 285 id. 97.)"*

The record of the deliberations of the Constitutional Convention shows that the Majority Report of the Committee on Legislative Article (article IV) recommended the approval of section 13 in the form in which it was included in the constitution as adopted. An amendment, first approved and later deleted, provided for insertion of the words "where heretofore prohibited or" between the words "law" and "when." The transcript of the Convention proceedings demonstrates that in adopting the language of section 13 the Convention intended to delete the enumeration of the specific cases found in section 22 of article IV of the constitution of 1870, in which no local or special laws could be enacted, and to make applicable to all legislation the principle that the General Assembly may not pass a special or local law when a general act is or can be made applicable. The principal change effected by section 13 is that it specifically rejects the rule enunciated in a long line of decisions of this court that whether a general law can be made applicable is for the legislature to determine *Sommers v. Patton (1948), 399 Ill. 540; Trustees v. The Commissioners of Lincoln Park (1918), 282 Ill. 348)* and specifically provides that "it shall be a matter for judicial determination." We conclude, therefore, that although the scope of judicial review of legislation is to that extent enlarged, section 13 requires no change in our definition of when a law is "general and uniform," "special," or "local."

The enactment of the County Board Act was made necessary by the decision of the Supreme Court in *Avery v. Midland County, Texas (1968), 390 U.S. 474, 20 L.Ed.2d 45, 88 S.Ct. 1114,* and the "one man, one vote" imbalance to be corrected was not present in any counties in Illinois except those within the classification created by section 2 of the County Board Act. Apparently the

General Assembly sought to effect the transition from county boards comprised of township supervisors and assistant supervisors (see *People ex rel. Maro v. Board of Auditors Rock Island Township (1971), 48 Ill.2d 202*) to the new type of county board more expeditiously than it would have been accomplished had the nomination of candidates been postponed until March 1972, and the election of the new county boards postponed until the general election in 1972. Whether the course chosen is wise or whether it is the best means to achieve the desired result is not a proper subject of judicial inquiry. *(Schreiber v. County of Cook (1944), 388 Ill. 297; Stewart v. Brady (1921), 300 Ill. 425.)* If there is a reasonable basis for the classification, and it bears a reasonable and proper relation to the purposes of the act and the evil it seeks to remedy, it does not violate the constitutional proscription of special or local laws. *(People ex rel. Du Page County v. Smith (1961), 21 Ill.2d 572; Crews v. Lundquist (1935), 361 Ill. 193.)* As the court said in *People ex rel. Du Page County v. Smith,* at page 577: "[A] law may be general notwithstanding that it may operate only in a single place where conditions necessary to its operation exist. *(Alexander v. City of Chicago, 14 Ill.2d 261; Du Bois v. Gibbons, 2 Ill.2d 392.)* A law is general not because it embraces all of the governed, but because it may, from its terms, embrace all who occupy a like position to those included. *(People ex rel. Adamowski v. Public Building Com. of Chicago, 11 Ill.2d 125; People v. Chicago Transit Authority, 392 Ill. 77.)* If there is a reasonable basis for differentiating between the class to which the law is applicable and the class to which it is not, the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may pass laws applicable only to such persons or objects. *(Hunt v. County of Cook, 398 Ill. 412.)* In this regard, it is well settled that an act is not local or special merely because of a legislative classification based upon popula-

tion *(Alexander v. City of Chicago, 14 Ill.2d 261)*, or territorial differences *(People ex rel. Adamowski v. Public Building Com. of Chicago, 11 Ill.2d 125)*. Such classifications will be sustained where founded upon a rational difference of situation or condition existing in the objects upon which it rests, and where there is a reasonable basis for the classification in view of the objects and purposes to be accomplished. *DuBois v. Gibbons, 2 Ill.2d 392; Gaca v. City of Chicago, 411 Ill. 146.*"

Plaintiffs do not question that the choice presented to the General Assembly was whether it was desirable to correct the evil of unequal representation of county boards expeditiously and incidentally reduce the number of days in which electors residing in the counties affected might register, or permit the constitutionally proscribed imbalance to exist for a longer period and provide for nomination of candidates for the office of county board member in primaries in March and the election of the members in November. Despite the substantial cost of the additional elections and the diminishing of the time during which residents of the counties affected may register, we are unable to say that the method which the General Assembly chose to provide for the elections created invalid classifications or resulted in violations of the constitutional provisions upon which plaintiffs base their contentions.

With respect to the contentions based on the alleged violations of section 3 of article III, we have previously held that an election is free which gives every qualified voter the right to cast his vote without restraint *(People v. Deatherage (1948), 401 Ill. 25, 37)*, and equal "when the vote of each voter is equal in its influence upon the result to the vote of every other elector—where each ballot is as effective as every other ballot." *Moran v. Bowley (1932), 347 Ill. 148, 162.*

For the reasons stated, the judgment of the circuit court of Madison County is reversed, the judgments of the circuit courts of Lake and Adams counties are affirmed,

and a writ of *mandamus* is awarded in accordance with the prayer of the petition.

*44891 — Judgment reversed.*
*44897 — Judgment affirmed.*
*44908 — Judgment affirmed.*
*44929 — Writ awarded.*