# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

**Board of Education of Peoria School District No. 150 v. Peoria Federation of Support Staff, Security/Policeman's Benevolent & Protective Ass'n Unit No. 114,**

**2013 IL 114853**

---

| | |
|---|---|
| Caption in Supreme Court: | THE BOARD OF EDUCATION OF PEORIA SCHOOL DISTRICT No. 150, Appellee, v. PEORIA FEDERATION OF SUPPORT STAFF, SECURITY/POLICEMAN'S BENEVOLENT AND PROTECTIVE ASSOCIATION UNIT No. 114 (The Illinois Educational Labor Relations Board *et al.*, Appellants). |
| Docket No. | 114853 |
| Filed | October 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A statutory amendment violated Illinois' constitutional ban on special legislation where it transferred a school district's security guards and truant officers from the jurisdiction of the Educational Labor Relations Board to that of the Labor Relations Board by language applicable to a school district's peace officers in "its own police department in existence on" the effective date, thereby closing the class on that date where a general law could have been made applicable. |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Sangamon County, the Hon. John P. Schmidt, Judge, presiding. |
| Judgment | Circuit court judgment reversed.<br>Appellate court judgment affirmed, as modified. |

Counsel on Appeal

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and Sharon A. Purcell, Assistant Attorney General, of Chicago, of counsel), and Shane M. Voyles, of Springfield, for appellants.

Stanley B. Eisenhammer, Elizabeth L. Jensen and Christopher M. Hoffmann, of Hodges, Loizzi, Eisenhammer, Rodick & Kohn LLP, of Arlington Heights, for appellee.

Justices

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Garman, Burke, and Theis concurred in the judgment and opinion.

Chief Justice Kilbride specially concurred, with opinion.

**OPINION**

¶ 1     The issues presented in this appeal are: (1) whether plaintiff school district had the right to bring a declaratory judgment action in the circuit court challenging the jurisdiction of the Illinois Labor Relations Board over a dispute involving the district and its security officers; and (2) whether Public Act 96-1257 is special legislation violative of article IV, section 13, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 13). The appellate court answered the first question in the affirmative (2012 IL App (4th) 110875, ¶ 38) and *suggested* an affirmative answer to the second question (2012 IL App (4th) 110875, ¶¶ 28-29), reversing the circuit court's dismissal of plaintiff's action and remanding "for further proceedings consistent with this opinion." 2012 IL App (4th) 110875, ¶ 41. We affirm the judgment of the appellate court, rendering, however, an unequivocally affirmative answer with respect to the second question.

¶ 2             SPECIAL LEGISLATION CLAUSE OF THE 1970 ILLINOIS
                                    CONSTITUTION

¶ 3     "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13.

¶ 4                                 BACKGROUND

¶ 5     The following facts are taken, for the most part, from the uncontested averments of plaintiff's complaint and the motion to dismiss subsequently filed by the defendants.

¶ 6        On March 15, 2011, plaintiff, the Board of Education of Peoria School District No. 150 (the District), filed a complaint in the circuit court of Sangamon County naming as defendants the Peoria Federation of Support Staff, Security/Policeman's Benevolent and Protective Association Unit No. 114 (the Union), the Illinois Educational Labor Relations Board (the IELRB), and the Illinois Labor Relations Board (the ILRB). In count I of the complaint, the District sought a declaration that Public Act 96-1257 constituted special legislation violative of the Illinois Constitution, and injunctive relief appurtenant to such a finding. In count II, the District sought a declaration that the Illinois Educational Labor Relations Act (IELRA) (115 ILCS 5/1 *et seq.* (West 2010)), rather than the Illinois Public Labor Relations Act (IPLRA) (5 ILCS 315/1 *et seq.* (West 2010)), governed labor disputes between the District and its security officers.

¶ 7        According to the complaint, the District employed 26 full-time and part-time employees who worked as "security agents and guards." At the time this litigation commenced, the Union represented those employees. The Union had first been certified by the IELRB to represent the District's "full and part time security guards and truant officers" in November of 1989. In October of 1996, the IELRB again certified the Union as the sole and exclusive bargaining representative for "all full and part-time guards, agents, security and police employees" employed by the District. Collective-bargaining agreements negotiated between October 1996 and August 2008 were all pursuant to IELRB certification and under the provisions of the IELRA. The last of these agreements expired on June 30, 2010. Public Act 96-1257 became effective on July 23, 2010. It amended the IPLRA, purporting to remove "peace officers" employed by "a school district" in "its own police department in existence on the effective date of this amendatory Act" from the purview of the IELRA, and the oversight IELRB, and to redefine them as "public employees," subject to the IPLRA and the jurisdiction of the ILRB. Correlatively, Public Act 96-1257 redefined "public employer" so as to remove "a school district" that employed "peace officers" in "its own police department in existence on the effective date of this amendatory Act" from the scope of the IELRA and place it under the provisions of the IPLRA.

¶ 8        On or about December 8, 2010, the District and the Union began negotiations on a new collective-bargaining agreement. During the course of contract negotiations between the District and the Union, a dispute arose over the time of day when negotiations would occur. Although it was the position of the Union that the IELRA no longer governed the Union's relationship with the District, in a letter dated December 28, 2010, the Union stated it was "prepared to file a charge, duplicate if necessary[,] with the IELRB and the ILRB." On March 3, 2011, the Union filed a representation petition with the ILRB seeking certification of the Union as the exclusive representative for the same bargaining unit that had been previously certified by the IELRB. That action prompted the filing of the District's complaint for declaratory judgment 12 days thereafter.

¶ 9        In paragraphs 25 and 26 of the complaint, the District presented the parties' conflicting interests as follows:

> "25. Under the IPLRA, if the parties reach an impasse during their negotiations, the employer does not have a right to impose the terms and conditions that it presented during negotiations, the matter goes directly to interest arbitration.

-3-

26. Under the IELRA, however, if the parties reach an impasse during their negotiations and the educational employer has exercised good faith during bargaining, then the educational employer has a right to impose the terms and conditions that were presented during negotiations and employees have the right to strike."

The complaint alleged that the District "has an interest in having the IELRA rather than the IPLRA apply to *** negotiations," and the Union a converse interest. When counsel for the District was subsequently asked, at oral argument before this court, to clarify what select group was *favored* by the amendment over others similarly situated, counsel's answers shifted and were initially ambiguous. Later, however, counsel was asked: "Does the Union benefit by being subject to the ILRB instead of the IELRB?" Counsel for the District responded that smaller groups—like the security personnel employed by the District—are favored by interest arbitration because their smaller numbers afford them less leverage than larger groups in a strike.

¶ 10        Citing attached transcripts of legislative history, the complaint avers that legislators knew, when they passed the amendment, that it would only apply to the District. The complaint further states in paragraphs 34 through 36:

"34. Since the amendment only applies to a school district which employs peace officers in its own police department in existence on the effective date of the amendment, the amendment by its own terms will never apply to any other school district which may, after the effective date of the amendment, decide to employ peace officers in its own police department.

35. This classification is arbitrary and treats similarly situated individuals and districts differently without an adequate justification or connection to the purpose of the statute.

36. This classification is not rationally related to a legitimate state interest."

In light of the foregoing, the District concluded count I of the complaint with the assertion that "Public Act 96-1257 is special legislation prohibited by Section 13 of Article 4 of the Illinois Constitution."

¶ 11        In count II, the District contended, alternatively, that its circumstances did not bring it within the purview of the statutory amendment, arguing that the District "neither maintains nor is authorized to establish and maintain a Police Department," "has not certified or appointed its security employees as truant officers," and "does not employee [*sic*] peace officers as defined by the IPLRA."

¶ 12        On April 22, 2011, the Union filed a section 2-615 (735 ILCS 5/2-615 (West 2010)) "Motion to Strike/Amend Pleadings," complaining that the District had "intentionally misnamed" the Union "to claim those officers are not really police or peace officers,"even though documents indicate they: (1) are supervised by a "Chief of Police," (2) are assigned "to the Campus police department," (3) are "required to appear in court, on School related cases" as police "officers," (4) wear uniforms and patches identifying them as "campus POLICE," (5) wear badges describing each officer as "OFFICER District 150 POLICE," (6) are issued a "Peoria Public Schools Campus Police Operations Manual" informing them that

those who complete course work at the Police Training Institute "possess full police authority for the school district and by state law are invested with full police powers," (7) may "[d]isplay and carry loaded weapons while on the premises of Peoria Public School District 150," and (8) "[e]ffect arrests and document those arrests with police reports submitted to the Peoria County State's Attorney for criminal prosecution."

¶ 13 On April 29, 2011, a motion to dismiss was filed by the IELRB and the ILRB. In that motion, the Boards argued that: (1) the challenged statutory provision does not classify school districts with their own police departments differently from school districts which do not have their own police departments; rather, it classifies all peace officers employed by educational institutions as public employees and is, therefore, not special legislation; (2) even if the statute applies to school districts which employ peace officers in their own police departments on the effective date of the amendment, applying it to plaintiff does not constitute improper special legislation; and (3) contrary to what the complaint alleges, this group of employees is not excluded from the jurisdiction of either the ILRB or the IELRB.

¶ 14 In a supporting memorandum, the Boards first took issue with the District's suggestion that the challenged statutory provision classified school districts with their own police departments differently from districts which did not maintain their own departments. The Boards opined that the provision merely classified all peace officers employed by educational institutions as public employees; therefore, the Boards suggested that the amendment was not unconstitutional as special legislation. Quoting this court's opinion in *Illinois Polygraph Society v. Pellicano*, 83 Ill. 2d 130, 137-38 (1980), the Boards stated that special legislation must "arbitrarily, and without a sound, reasonable basis, discriminate[ ] *in favor of* a select group." (Emphasis in original.) The Boards argued that the group at issue here is not employees of educational institutions; it is peace officers employed by public educational institutions. The Boards contended: "Plaintiff has not alleged a group of similarly situated persons who are treated differently." The Boards concluded that the amendment actually "fixed" an irrational scheme of classification by "bringing members of a similarly situated group—peace officers employed by public educational institutions—together within the province of one statute, the Illinois Public Labor Relations Act."

¶ 15 The Boards submitted, even if the relevant group consists of "school districts which employ peace officers in their own police departments on the effective date of the amendment," applying it to plaintiff does not constitute improper special legislation. Citing the appellate court's decision in *Crusius v. Illinois Gaming Board*, 348 Ill. App. 3d 44, 58 (2004), the Boards stated that "classes of one are permissible if there is a rational justification for the limited application, and the narrow classification is reasonably related to the justification." On this point, the Boards concluded:

> "Here, the governmental interest in putting all peace officers employed by school districts—whether in their own police department or not—under the umbrella of one labor board makes this classification constitutional. Speculating whether some school district in the future may create a police force and claim its police department employees do not fall under the definition of public employee is not a reason for declaring the legislation unconstitutional now."

¶ 16    In a supplemental memorandum, filed May 9, 2011, the Boards challenged the circuit court's jurisdiction over the controversy. The Boards argued that the IPLRA and the IELRA "give exclusive jurisdiction over deciding what group of employees belongs to what type of bargaining unit to the Labor Boards" and, under both acts, those decisions are "reviewable directly by the Appellate Court." The supplemental memorandum was not responsive to a situation—such as this—where the question is *which* Board has jurisdiction of the matter.

¶ 17    On July 20, 2011, the District filed a response to the Boards' motion to dismiss. The District averred, *inter alia*, that the "effect (and purpose) of the Amendment is to deny the affected employees the right to strike and, instead, to grant them the power to invoke interest arbitration to settle labor disputes with their employing school district."

¶ 18    The District argued that the amendment created an arbitrary split in the Boards' jurisdiction over peace officers employed by educational employers, opining that the ILRB "will now have jurisdiction over peace officers employed by a school district's own police departments as well as peace officers employed by a state university" (see, for the latter assertion, 5 ILCS 315/3(n), (o) (West 2012)), while the IELRB "retains jurisdiction over peace officers employed by a school district which does not have a police department and peace officers employed by any other educational employer." In response to the Boards' assertions that the amendment merely brought "all peace officers employed by public educational institutions" under the jurisdiction of the same Board (the ILRB) and that there are no similarly situated groups who remain covered by the IELRA, the District cited, as controverting examples, peace officers employed by the following educational employers:

    (1) charter schools;

    (2) contract schools or turnaround schools;

    (3) community colleges;

    (4) combination of public schools, including joint agreements of any type formed by two or more school districts;

    (5) a subcontractor of institutional services of a school district; and

    (6) any state agency whose major function is providing educational services.

In that regard, the District referenced subsections (a) and (b) of section 2 of the IELRA (115 ILCS 5/2(a), (b) (West 2012)). In its brief before this court, the District emphasizes that community colleges, in particular, are statutorily authorized to employ peace officers (see 110 ILCS 805/3-42.1 (West 2012)); yet, the District claims, they "continue to fall under the IELRA."

¶ 19    The District contended there is "no rational reason why all other employees in a school district do not have the right to go to interest arbitration while school district peace officers have the right," opining that it "cannot be based on public safety concerns." The District noted:

    "All school districts except for one operate without their own police officers. In the event of a strike, city and county offices would still provide police protection, as they do now. Nor could the reason be that a peace officer strike would shut down a school district. Other employee strikes prevent school districts from operating."

The District concluded its constitutional argument reiterating its position that there is no justification for the disparate treatment effected by the amendment insofar as "the interests of the peace officers existing in the Peoria School District are identical to peace officers that could be or are employed by other school districts or educational employers in the state in relation to the purpose of the statute."

¶ 20    With respect to the jurisdictional issue, the District argued that "Illinois courts have jurisdiction when presented with a challenge to the jurisdiction of an administrative agency," citing *People ex rel. Thompson v. Property Tax Appeal Board*, 22 Ill. App. 3d 316, 321 (1974), as such a challenge "presents a matter of law determinable by the courts and not a matter of fact determinable by the administrative body," citing *Office of the Lake County State's Attorney v. Illinois Human Rights Comm'n*, 200 Ill. App. 3d 151, 156 (1990). The District argued that it was "imperative" that the circuit court "decide the issue of jurisdiction because there is a risk of conflicting administrative decisions." The District also noted that an appeal from an ILRB decision must be to the Third District of the Appellate Court, while an IELRB decision must be appealed to the Fourth or First Districts.

¶ 21    On September 7, 2011, the circuit court issued orders denying the Union's motion and granting the Boards' motion as to both count I and count II of the complaint. With respect to the former, the court found that "peace officers are public employees under the IPLR Act, and that the amendment "is not unconstitutional as special legislation." The court dismissed count II, finding it "clear that the IELRB and ILRB have jurisdiction over collective bargaining unit determinations."

¶ 22    As noted, the appellate court reversed and remanded, in a unanimous decision. 2012 IL App (4th) 110875. At the outset, the court acknowledged the legislature's determination that " 'where the right of employees to strike is prohibited by law, it is necessary to afford an alternate, expeditious, equitable and effective procedure for the resolution of labor disputes.' " 2012 IL App (4th) 110875, ¶ 16 (quoting 5 ILCS 315/2 (West 2010)). The appellate court recognized that "alternate" procedure—interest arbitration—to be " 'qualitatively similar to the right to strike.' " 2012 IL App (4th) 110875, ¶ 16 (quoting *State of Illinois Department of Central Management Services v. State of Illinois Labor Relations Board, State Panel*, 373 Ill. App. 3d 242, 255 (2007) (hereafter *CMS*)).

¶ 23    Addressing count I of the District's complaint, and quoting from this court's decision in *Crusius v. Illinois Gaming Board*, 216 Ill. 2d 315, 325 (2005), the appellate court reiterated the standards of review this court found applicable to a special legislation challenge. 2012 IL App (4th) 110875, ¶ 18. The court noted that the special legislation clause prohibits the legislature from " 'conferring a special benefit or privilege upon one person or group and excluding others that are similarly situated.' " 2012 IL App (4th) 110875, ¶ 18 (quoting *Crusius*, 216 Ill. 2d at 325). There are two requisite elements to a successful special legislation challenge: (1) " 'the statutory classification at issue discriminates in favor of a select group,' " and (2) " 'the classification is arbitrary.' " 2012 IL App (4th) 110875, ¶ 18 (quoting *Crusius*, 216 Ill. 2d at 325). Where, as here, no fundamental right or suspect class is affected by the statute in question, " 'the deferential rational basis test' " applies. 2012 IL App (4th) 110875, ¶ 18 (quoting *Crusius*, 216 Ill. 2d at 325). Applying those standards, the appellate court determined that plaintiff's complaint "makes out a claim that Public Act No.

96-1257 is special legislation." 2012 IL App (4th) 110875, ¶ 20.

¶ 24 *Assuming* the amendment applied to the parties, the court determined "the relevant distinctions are (1) between peace officers employed by plaintiff, the only district currently employing police officers directly, and any peace officers who may be employed directly by other school districts in the future; and (2) between plaintiff and any school district that, in the future, may employ peace officers directly." 2012 IL App (4th) 110875, ¶ 20.

¶ 25 Construing the pleadings in the light most favorable to the District—the party against which dismissal was sought and obtained—the appellate court gave "plaintiff the benefit of the doubt" when plaintiff asserted that Public Act 96-1257, "if it applies to these parties, favors Unit No. 114 and disfavors plaintiff by substituting interest arbitration for the employees' right to strike." 2012 IL App (4th) 110875, ¶ 23. The court rejected the labor boards' "implication" that the court had, in *CMS*, evaluated the desirability of interest arbitration *versus* striking from either the employees' or the employer's perspective, let alone concluded that "the alternative proceedings were a wash for all parties." 2012 IL App (4th) 110875, ¶ 24. The court observed that the labor boards had "cited no cases stating or holding the right to strike benefits an employee as much as the right to engage in interest arbitration, which is the crux of the labor boards' position." 2012 IL App (4th) 110875, ¶ 24.

¶ 26 Having found a statutory classification that arguably discriminated in favor of a select group, the appellate court next held that classification was arbitrary insofar as the statute only applied to peace officers employed by a school district in its own police department *in existence on the effective date* of the amendment. 2012 IL App (4th) 110875, ¶ 26. In that regard, the court rejected the Union's contention that the language of the amendment supported a prospective application, concluding instead that the class of officers affected by the amendment closed on July 23, 2010, the public act's effective date, and officers directly employed by school districts in the future would remain under the purview of the IELRA. 2012 IL App (4th) 110875, ¶ 27. From that finding, the court continued:

"If the legitimate interest justifying the classification in the amendment is to ensure that police officers, no matter who employs them, are not allowed to strike, then the distinction between police employees of school districts currently employing police officers and those of school districts that may employ police in the future is irrational. No legitimate state interest identified by the parties—and none we can conceive of—accounts for the closing of the affected class by reference to the statute's effective date." 2012 IL App (4th) 110875, ¶ 27.

The appellate court found that the District's "right not to be disadvantaged by special legislation is at issue *now* in ongoing bargaining and labor disputes." The court indicated it would "not wait to see whether another school district actually establishes its own police force in the future," finding that "plaintiff's constitutional challenge does not depend on this contingency." (Emphasis in original.) 2012 IL App (4th) 110875, ¶ 29.

¶ 27 Although the appellate court's analysis bespeaks its belief that Public Act 96-1257 *is* special legislation, violative of the Illinois Constitution (2012 IL App (4th) 110875, ¶¶ 28-29 (finding the legislature's "classification" and "distinctions" "arbitrary"), the court did not actually declare it to be such. Instead, the appellate court simply found the allegations of

count I "sufficient to withstand the labor boards' motion to dismiss." 2012 IL App (4th) 110875, ¶ 39.

¶ 28    With respect to the jurisdictional issue—whether a declaratory judgment action was properly brought in the circuit court under these circumstances challenging the jurisdiction of the ILRB—the appellate court relied principally upon this court's opinion in *County of Kane v. Carlson*, 116 Ill. 2d 186, 199 (1987) ("The rule [of exhaustion of remedies] does not apply when a party challenges the constitutionality of a statute on its face [citations] or contests the authority or jurisdiction of the administrative agency [citations] ***."), and an appellate court decision in *Office of the Lake County State's Attorney v. Illinois Human Rights Comm'n*, 200 Ill. App. 3d 151, 155 (1990), in holding that the action was properly brought in the circuit court.

¶ 29    In *County of Kane*, the chief judge of a judicial circuit challenged the Illinois Labor Relations Board's jurisdiction over charges of unfair labor practices filed against him by a union of probation officers. The chief judge argued, *inter alia*, that he was not a public employer and, thus, "not within the scope of the [Public Labor Relations] Act." *County of Kane*, 116 Ill. 2d at 201. Because he challenged the labor board's jurisdiction, and because "the questions presented [were] entirely legal and [did] not require fact finding by the administrative agency or an application of its particular expertise," this court held the judge was not required to exhaust administrative remedies before seeking declaratory and injunctive relief in the circuit court. *County of Kane*, 116 Ill. 2d at 199-200.

¶ 30    In *Lake County*, in a complaint before the circuit court seeking declaratory and injunctive relief, a State's Attorney challenged the jurisdiction of the Department of Human Rights over an assistant State's Attorney's charge before that agency of race- and sex-based discrimination. The State's Attorney alleged, *inter alia*, that the assistant State's Attorney was not an "employee" and the State's Attorney was not an "employer" or a "person" as used in the Illinois Human Rights Act (Ill. Rev. Stat. 1987, ch. 68, ¶¶ 2-101(A), (B), 1-103(L)). *Lake County*, 200 Ill. App. 3d at 153-54. The circuit court dismissed for lack of jurisdiction because the State's Attorney failed to exhaust administrative remedies. The appellate court, however, found the circuit court had jurisdiction over the State's Attorney's complaint because it attacked the administrative jurisdiction of the Department of Human Rights and was therefore exempt from exhaustion requirements. *Lake County*, 200 Ill. App. 3d at 156-57. As in *County of Kane*, the appellate court found the State's Attorney's jurisdictional challenge raised "entirely legal" questions, and the court ultimately held: "The State's Attorney need not first subject himself to an exercise of jurisdiction of the [Human Rights] Commission, which is not authorized by law[,] simply to obtain a decision from which he could" pursue administrative relief and, ultimately, appeal. *Lake County*, 200 Ill. App. 3d at 157.

¶ 31    The appellate court in this case found the reasoning of *County of Kane* and *Lake County* controlling. It distinguished its decision in *Nestle USA, Inc. v. Dunlap*, 365 Ill. App. 3d 727, 735 (2006), a case in which the court held the plaintiff *was* required to exhaust administrative remedies.

¶ 32    The court noted, in *Nestle*, the plaintiff sought a declaratory judgment that the Illinois

Workers' Compensation Commission had exceeded its statutory powers when an arbitrator working on the agency's behalf reinstated a claim beyond, the plaintiff argued, the time allotted for doing so. The appellate court found the plaintiff was improperly attempting to "skip review [by the administrative agency] and seek judicial review by alleging that the arbitrator's decision was not authorized by statute." *Nestle*, 365 Ill. App. 3d at 734-35. The *Nestle* court noted that circuit courts "would be forced [in such circumstances] to first determine if arbitrators' decisions were wrong in order to determine if they had jurisdiction." *Nestle*, 365 Ill. App. 3d at 735.

¶ 33     This appellate panel noted that the "merits," as that term was used in *Nestle*—"among other things whether the petitioned unit is 'appropriate' and whether the petitioners complied with mandated voting procedures"—were not the subject of the District's circuit court complaint in this case. 2012 IL App (4th) 110875, ¶ 38. The court found the questions that *were* posed in the complaint for declaratory judgment—"whether the unit's members are public employees and their employer a public employer"—"are jurisdictional prerequisites apart from the merits of the case" and those questions are "appropriately addressed by a trial court prior to a plaintiff's submission to an administrative agency's unauthorized exercise of its jurisdiction." 2012 IL App (4th) 110875, ¶ 38.

¶ 34     In light of its findings on the constitutional and jurisdictional issues before it, the court reversed the judgment of the circuit court and remanded for "further proceedings consistent with this opinion." 2012 IL App (4th) 110875, ¶ 41. Given the parameters and content of the appellate court's analysis, it does not appear there would be much for the circuit court to do upon remand.

¶ 35                             ANALYSIS

¶ 36                             Jurisdiction

¶ 37     With regard to the jurisdictional issue presented herein, the parties cite no case with comparable facts, *i.e.*, a constitutional challenge to a statute that would potentially divest one labor board (the IELRB) of jurisdiction, with specified dispute resolution procedures, and confer it upon another (the ILRB), with different procedures. Disposition of the constitutional issue dictates which of the two boards has jurisdiction of this matter. That decision is properly one for the courts, and, in the first instance, the circuit court.

¶ 38     As this court recently confirmed in *Goodman v. Ward*, 241 Ill. 2d 398, 411 (2011), administrative agencies have no authority to declare statutes unconstitutional or even to question their validity. The appellate court's reliance upon *County of Kane* was well placed. In that case, this court held that a party need not exhaust administrative remedies when that party challenges the constitutionality of a statute on its face or contests the authority or jurisdiction of the administrative agency. *County of Kane*, 116 Ill. 2d at 199. This court found it significant that "the questions presented are entirely legal and do not require fact finding by the administrative agency or an application of its particular expertise." *County of Kane*, 116 Ill. 2d at 199.

¶ 39     The constitutional issue here is compounded, beyond that presented in *County of Kane*, insofar as the question is not simply *if* an agency has jurisdiction, but rather *which of two*

*agencies* has jurisdiction. That question is one for the courts.

¶ 40                                         Constitutionality

¶ 41        Where a statute is challenged as special legislation, we review, *de novo*, a circuit court's determination of constitutionality. *Crusius v. Illinois Gaming Board*, 216 Ill. 2d 315, 324 (2005). We apply the same standard in review of a circuit court's ruling on a motion to dismiss. *Bell v. Hutsell*, 2011 IL 110724, ¶ 9.

¶ 42        We begin with a principal point of argument raised by the District in the circuit court, and *the* basis for the appellate court's suggestion that Public Act 96-1257 is special legislation violative of article IV, section 13, of the Illinois Constitution, *i.e.*, the "troubling distinction" in "(1) the statute's treatment of officers currently employed by school districts and those who may be employed by other school districts in the future and (2) its corresponding treatment of the school districts employing such officers." 2012 IL App (4th) 110875, ¶ 27. The appellate court found: "[T]he distinction between police employees of school districts currently employing police officers and those of school districts that may employ police in the future is irrational. No legitimate state interest identified by the parties—and none we can conceive of—accounts for the closing of the affected class by reference to the statute's effective date." 2012 IL App (4th) 110875, ¶ 27. The appellate court concluded: "Plaintiff's right not to be disadvantaged by special legislation is at issue *now* in ongoing bargaining and labor disputes. We will not wait to see whether another school district actually establishes its own police force in the future; plaintiff's constitutional challenge does not depend on this contingency." (Emphasis in original.) 2012 IL App (4th) 110875, ¶ 29.

¶ 43        The appellate court's analysis, which accounts for those who might occupy a similar position *in the future*, is not foreign to our special legislation jurisprudence. In fact, in that regard it is consistent with opinions rendered by this court under the Illinois Constitution of 1870 (Ill. Const. 1870, art. IV, § 22)—*Potwin v. Johnson*, 108 Ill. 70 (1883); *Pettibone v. West Chicago Park Commissioners*, 215 Ill. 304 (1905); *Dawson Soap Co. v. City of Chicago*, 234 Ill. 314 (1908); *Mathews v. City of Chicago*, 342 Ill. 120 (1930)—and at least two cases decided after the effective date of our current constitution—*People ex rel. East Side Levee & Sanitary District v. Madison County Levee & Sanitary District*, 54 Ill. 2d 442 (1973); *Wright v. Central Du Page Hospital Ass'n*, 63 Ill. 2d 313 (1976).

¶ 44        In *Potwin*, which was later quoted approvingly in *Dawson Soap Co. v. City of Chicago*, 234 Ill. 314, 317 (1908), this court employed the following rationale in finding an act affecting cities and villages acceptably general:

> "[T]he act in relation to cities and villages is a general law, and not local or special, although there may be municipal corporations to which it is not applicable, namely, municipal corporations in existence under special charters at the time of the adoption of the constitution, which have not since sought to have their charters changed or amended. It is general and of uniform application to all cities, towns and villages *thereafter becoming incorporated*, or *thereafter having their charters changed or amended*, to the extent of such change or amendment, and thus fully conforms to the definition of a general law." (Emphases added.) *Potwin*, 108 Ill. at 80-81.

-11-

In other words, a "general law" is one that applies to all who are similarly situated at the time of passage *or* in the future.

¶ 45　　In *Pettibone*, this court concluded that the use of the phrases "which is now included within the limits of any city" and "shall now exist" in the act under scrutiny supported a finding that the act was special legislation:

> "The use of the word, 'now,' in section 1 of the act excludes the idea that the act was intended to apply to the future, or to any town, which in the future might have its limits co-extensive with the limits of the park district. The provisions of the act are limited to the present, and to a town now complying with the description indicated. Therefore, the decisions referring to such towns, as might in the future come within the designation specified in the act, can have no application to the act now under consideration. For the reasons thus stated, we are of the opinion that the act *** is unconstitutional as being a local or special law, and as being in conflict with section 22 of article 4 [of the Illinois Constitution of 1870]." *Pettibone*, 215 Ill. at 336-37.

¶ 46　　A quarter of a century after this court issued its decision in *Pettibone*, this court appears to have remained steadfast in analyzing special legislation challenges by reference to not only classes *presently* existing, but also those that might be similarly situated *in the future*. In *Mathews v. City of Chicago*, 342 Ill. 120, 128-29 (1930), this court stated: "We have repeatedly held that a law may be general and yet operative in a single place where the condition necessary to its operation exists. [Citations.] Whether the condition exists in one place or many, if the classification is reasonable and just it does not violate the Constitution and it applies to all places now within its terms *and to all that may hereafter come within its terms*." (Emphasis added.)

¶ 47　　Statements this court made shortly after the advent of our current constitution of 1970 acknowledge that the new constitution effected no change in this court's special legislation jurisprudence, other than the framers' expressed intention that courts not defer to legislative determinations as to whether a general law can be made applicable.

¶ 48　　In *Bridgewater v. Hotz*, 51 Ill. 2d 103, 109 (1972), this court determined that "[s]ound rules of construction require that in those instances in which this court, prior to the adoption of the constitution of 1970, has defined a term found therein, that it be given the same definition, unless it is clearly apparent that some other meaning was intended." This court noted, pursuant to its precedent, "Laws are general and uniform when alike in their operation upon all persons in like situation." (Internal quotation marks omitted.) *Bridgewater*, 51 Ill. 2d at 109. The term "special" refers to "laws which impose a particular burden or confer a special right, privilege or immunity upon a portion of the people of the State." (Internal quotation marks omitted.) *Bridgewater*, 51 Ill. 2d at 109-10. Quoting from *Latham v. Board of Education of the City of Chicago*, 31 Ill. 2d 178, 183 (1964), the *Bridgewater* court acknowledged that the constitutional prohibition against special legislation " 'does not mean that every law shall affect alike every place and every person in the State but it does mean that it shall operate alike in all places and on all persons in the same condition.' " *Bridgewater*, 51 Ill. 2d at 109.

¶ 49　　The court emphasized that the principal change effected by the new constitution was that

it specifically rejected the rule, enunciated in a line of decisions, that whether a general law can be made applicable is for the legislature to determine, the framers specifically providing that question henceforth "shall be a matter for *judicial* determination." (Emphasis added.) (Internal quotation marks omitted.) *Bridgewater*, 51 Ill. 2d at 110. The *Bridgewater* court acknowledged that "[a] law is general not because it embraces all of the governed, but because it *may*, from its terms, embrace all who occupy a like position to those included." (Emphasis added.) *Bridgewater*, 51 Ill. 2d at 111.

¶ 50 One year after *Bridgewater*, this court rendered its opinion in *People ex rel. East Side Levee & Sanitary District v. Madison County Levee & Sanitary District*, 54 Ill. 2d 442 (1973). In *East Side Levee*, this court cited, *inter alia*, its earlier decision in *Bridgewater* for the propositions that "the criteria developed under the earlier constitution for determining whether a law is local or special are still valid"; however, given the changes in the 1970 Constitution, "the deference previously accorded the legislative judgment whether a general law could be made applicable has been largely eliminated." *East Side Levee*, 54 Ill. 2d at 447.

¶ 51 At issue in *East Side Levee* was an enactment which purported to divide, into two separate districts, any sanitary district "which lies in 2 counties and which has an equalized assessed valuation for tax purposes of $100,000,000 or more, upon the effective date of this amendatory Act of 1972," to provide for "more effective administration and fiscal control." See *East Side Levee*, 54 Ill. 2d at 447. The original sanitary district challenged the constitutionality of the enactment in the circuit court of St. Clair County. The "not yet organized" sanitary district, and two trustees of the original district, sought an injunction in the circuit court of Madison County to restrain the depositories of the original district, the county collector, and the trustees of the "St. Clair Levee and Sanitary District" from disbursing any funds pending resolution of the legal questions stemming from the questioned legislation. *East Side Levee*, 54 Ill. 2d at 445.

¶ 52 Applying the applicable criteria developed under the earlier constitution, and citing *Pettibone*, this court found the enactment violated the constitution's prohibition against special legislation, noting:

"The briefs cite no reasons, and none are apparent to us, for restricting the advantages of 'more effective administrative and fiscal control' to those two-county districts which on December 22, 1972 (the effective date of the Act), had an equalized assessed valuation of $100,000,000, and not extending the same advantages to those districts reaching that valuation at a subsequent time." *East Side Levee*, 54 Ill. 2d at 447.

This court concluded: "It is our opinion that a general law could have been made applicable, and that Public Act 77-2819 therefore violates the constitution's prohibition against special legislation." *East Side Levee*, 54 Ill. 2d at 447.

¶ 53 *East Side Levee* was cited approvingly, and dispositively, in *Wright*. At issue in *Wright* was the constitutionality of section 401a of the Illinois Insurance Code (Ill. Rev. Stat. 1975, ch. 73, ¶ 1013a), which was added by section 3 of Public Act 79-960. That new section provided:

"No insurance company licensed or authorized to write insurance covering medical,

hospital or other healing art malpractice shall refuse to renew any existing policy providing such coverage at the rates existing on June 10, 1975, unless such company shall have provided sufficient evidence to justify such increase to the Director of Insurance, provided that the Director shall not approve such increase until after public hearings have been held and the increase justified from data from the books and records of such company."

See *Wright*, 63 Ill. 2d at 330. Plaintiffs argued, *inter alia*, that the enactment constituted special legislation in violation of section 13 of article IV of the Illinois Constitution. This court noted: "By its terms section 401a regulates medical malpractice insurance rates on policies that were in existence on June 10, 1975, and not those written after that date." *Wright*, 63 Ill. 2d at 330. Citing *East Side Levee*, the court found that a general law could have been made applicable and held the statute's temporal dichotomy "violative of section 13 of article IV of the Constitution of 1970." *Wright*, 63 Ill. 2d at 331.

¶ 54       The cases cited—*Potwin*, *Pettibone*, *Dawson Soap Co.*, *Mathews*, *East Side Levee*, and *Wright*—collectively stand for the principle that a law the legislature considers appropriately applied to a generic class presently existing, with attributes that are in no sense unique or unlikely of repetition in the future, cannot rationally, and hence constitutionally, be limited of application by a date restriction that closes the class as of the statute's effective date. Barring some viable rationale for doing so, it would, for example, violate the proscription of the constitution for the legislature to apply a law to a person or entity in existence on the effective date of enactment, but make it inapplicable to a person or entity who assumed those attributes or characteristics the day after the statute's effective date.

¶ 55       That said, as we have noted, article IV, section 13, of our constitution "only prohibits passage of a special or local law when 'a general law is or can be made applicable.' " *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 154 (2006) (quoting in part Ill. Const. 1970, art. IV, § 13). Nothing in the constitution bars the legislature from enacting a law specifically addressing the conditions of an entity that is uniquely situated. *Schiller*, 221 Ill. 2d at 154.

¶ 56       It is *that* principle that underpins our decisions in *Schiller*, *Big Sky Excavation, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221 (2005), *Crusius v. Illinois Gaming Board*, 216 Ill. 2d 315 (2005), and *County of Bureau v. Thompson*, 139 Ill. 2d 323 (1990), notwithstanding instances of broader language included in the analyses. See *Schiller*, 221 Ill. 2d at 135-37 (legislation was tailored to address a specific annexation issue involving a particular piece of property and a limited geographical area); *Big Sky*, 217 Ill. 2d at 227-29 (legislation in effect abated a complex Commerce Commission case against Illinois Bell, rendered all its business services "competitive" within the meaning of the Universal Telephone Service Protection Law without further review, compelled Bell to make $90 million in refunds to the customers who would have been affected by the abated Commission proceedings, and obligated the company to make separate deposits of $15 million into two different funds); *Crusius*, 216 Ill. 2d at 319-20 (while Emerald Casino's administrative appeal was pending before the Illinois Gaming Board, legislation was enacted allowing "[a] licensee that was not conducting riverboat gambling on January 1, 1998" (Emerald) to apply for a license renewal and approval of relocation, and directing the Board to "grant the

application and approval upon receipt by the licensee of approval from the new municipality or county *** in which the licensee wishes to relocate"); *County of Bureau*, 139 Ill. 2d at 328-29 (legislation directed the governmental units otherwise responsible for maintaining highway and bridge infrastructure within their territories to maintain infrastructure associated with the Illinois and Mississippi Canal, which the state acquired from the federal government).

¶ 57    With respect to the case now before us, *County of Bureau*, *Crusius*, *Big Sky*, and *Schiller* are distinguishable on their facts insofar as the legislature, in each case, was addressing a problem unique to a particular geographical area and/or one involving peculiar, multifaceted economic considerations. In such circumstances, a general law could not have been applied, as no other person or entity did, or could, occupy the precise position of the party or class affected. In this case, however, a general law clearly could have been enacted that would have affected what is, and henceforth would be, a generic class of individuals.

¶ 58    We reject, in passing, the contention that this language applies, prospectively, to school districts that may, in the future, employ peace officers in their own police departments. Similar language in the acts at issue in *Pettibone*, *East Side Levee*, and *Wright* was interpreted by this court as restrictive, closing the affected class as of the effective date of the statute. See *Pettibone*, 215 Ill. at 336-37; *East Side Levee*, 54 Ill. 2d at 447; *Wright*, 63 Ill. 2d at 330.[1] We interpret it similarly here. If statutory language is clear and unambiguous, it must be applied as written, without resort to further aids of statutory construction. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56.

¶ 59    We, like the appellate court, find no basis for restricting the reach of the amendment herein to "peace officers employed by a school district in its own police department *in existence on the effective date of [the] amendatory Act*." (Emphasis added.) 5 ILCS 315/3(n) (West 2010). In the policy statement of the IPLRA, the legislature itself set forth the rationale for according "[e]ssential services employees" the remedy of arbitration as a means to settle labor disputes: "To prevent labor strife and to protect the public health and safety ***." 5 ILCS 315/2 (West 2010). The legislature obviously deems peace officers employed by a school district, in its own police department, to be "so essential that the interruption or termination of [their] function will constitute a clear and present danger to the health and safety of the persons in the affected community." See 5 ILCS 315/3(e) (West 2010) (defining "[e]ssential services employees"). Having made that determination, it is irrational, and inconsistent with the reasoning of this court's decision in *East Side Levee*, not to extend the benefits and protection of interest arbitration to citizens of those school districts that may hereafter employ peace officers in their own police departments. As in *East Side Levee*, there is no reason "for restricting the advantages" of the legislation to a district with characteristics currently qualifying and "not extending the same advantages to those districts" qualifying "at a subsequent time." See *East Side Levee*, 54 Ill. 2d at 447.

---

[1] The ILRB's website suggests that it may interpret this language more broadly (see http://www.state.il.us/ilrb/subsections/frequent/index.asp), but such an interpretation is contrary to our precedent.

¶ 60        For the foregoing reasons, we find that a general law could have been made applicable in this case, that there is no rational justification for the amendment's limited application via effective-date restriction. Thus, we hold that Public Act 96-1257 violates article IV, section 13, of the Illinois Constitution. Unlike the appellate court, we do not feel constrained, by the procedural posture of this case, from concluding this litigation with our judgment. The appellate court provided the rationale for holding Public Act 96-1257 violative of the constitution's special legislation clause, but felt compelled to remand "for further proceedings" consistent with its opinion. 2012 IL App (4th) 110875, ¶ 41. We do not know what such proceedings would entail, as the parties appear to have brought every applicable argument and consideration to bear in this appeal. Therefore, we enter declaratory judgment for the District on the question of the statute's constitutionality. See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994) (this court may "enter any judgment and make any order that ought to have been given or made, and *** grant any relief *** that the case may require"). Thus, we reverse the judgment of the circuit court outright, with no remand, and affirm the judgment of the appellate court, as modified.

¶ 61        Circuit court judgment reversed.

¶ 62        Appellate court judgment affirmed, as modified.

¶ 63        CHIEF JUSTICE KILBRIDE, specially concurring:

¶ 64        Although I agree with the majority's resolution of the constitutional issue, I write separately to emphasize that the circuit court's initial consideration of that issue in the underlying declaratory judgment action was proper only under the circumstances here. Indeed, recognizing the unique nature of this case, the majority correctly notes that no other Illinois decision analyzes the primary legal issue—a constitutional challenge to a statute that would potentially divest the Illinois Educational Labor Relations Board (IELRB) of jurisdiction and confer it upon the Illinois Labor Relations Board (ILRB). *Supra* ¶ 37. In other words, our holding is applicable only to the facts and issue presented in this appeal.

¶ 65        This distinction is important because the IELRB and ILRB are governed by comprehensive statutory schemes that extensively address public sector collective-bargaining matters, respectively the Illinois Educational Labor Relations Act (115 ILCS 5/1 *et seq.* (West 2010)) and the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2010)). As this court has long recognized, when "the legislature enacts a comprehensive statutory scheme, creating rights and duties which have no counterpart in common law or equity, the legislature may define the 'justiciable matter' in such a way as to preclude or limit the jurisdiction of the circuit courts." *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504*, 128 Ill. 2d 155, 165 (1989). Accordingly, this court has consistently held that the IELRB and ILRB have *exclusive* jurisdiction to hear disputes that fall within their respective statutory schemes. *Board of Education of Community School District No. 1, Coles County v. Compton*, 123 Ill. 2d 216, 221-22 (1988); *City of Freeport v. Illinois State Labor Relations Board*, 135 Ill. 2d 499, 505 (1990); *Warren Township High School District 121*, 128 Ill. 2d at 166. Our well-

-16-

founded holding on that issue is not disturbed by this decision.

¶ 66 Moreover, in relevant part, the respective statutory schemes governing the ILRB and IELRB provide that final decisions from those boards are reviewable by direct appeal to the appellate court. 5 ILCS 315/9(i), 11(e) (West 2010); 115 ILCS 5/16 (West 2010). Accordingly, we have discouraged litigants involved in school-related labor disputes from attempting to circumvent the authority of the review board by filing actions in the circuit court because "[t]o allow the parties in school labor disputes to freely seek circuit court intervention would disrupt the statutory scheme." *Warren Township High School District 121*, 128 Ill. 2d at 165-66. Nothing in this decision should be construed as deviating from this admonishment, or otherwise altering the typical process required under the applicable statutory provisions to resolve labor disputes before the IELRB or ILRB.

¶ 67 For these additional reasons, I respectfully concur in the majority's judgment.