# Illinois Official Reports

## Appellate Court

*Moline School District No. 40 Board of Education v. Quinn*,
2015 IL App (3d) 140535

| | |
|---|---|
| Appellate Court Caption | MOLINE SCHOOL DISTRICT NO. 40 BOARD OF EDUCATION, Plaintiff-Appellant, v. HONORABLE PAT QUINN, Governor of the State of Illinois; THE ILLINOIS DEPARTMENT OF REVENUE; BRIAN A. HAMER, as Director of the Illinois Department of Revenue; THE ROCK ISLAND COUNTY BOARD OF REVIEW and its members DAN DePORTER, JOAN RUSSELL, and DICK SCHROEDER; LARRY WILSON, Chief County Assessor, Rock Island County; WINNA PANNELL, Blackhawk Township Assessor, Rock Island County; and ROSE BOOKER, Coal Valley Township Assessor, Rock Island County; all in their official capacities, Defendants-Appellees (Elliot Aviation, Inc., and Coal Valley Fire Protection District, Intervening Defendants-Appellees). |
| District & No. | Third District<br>Docket No. 3-14-0535 |
| Filed | July 15, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County; No. 13-MR-296; the Hon. Frank R. Fuhr, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

| Counsel on | Patrick J. Hanlon and Floyd D. Perkins (argued), both of Nixon |
| Appeal | Peabody LLP, of Chicago, and Daniel Churchill and Mark D. |
| | Churchill, both of Churchill & Churchill P.C., of Moline, for |
| | appellant. |

Lisa Madigan, Attorney General, of Chicago (Evan Siegel (argued), Assistant Attorney General, of counsel), for appellees Brian A. Hamer, Pat Quinn, and Illinois Department of Revenue.

Robert V.P. Waterman, Jr., and Jason J. O'Rourke (argued), both of Lane & Waterman LLP, of Davenport, Iowa, for appellee Elliot Aviation, Inc.

Panel          JUSTICE CARTER delivered the judgment of the court, with opinion.
               Justices Holdridge and Wright concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal arises from a constitutional challenge brought by the plaintiff, the Moline School District No. 40 Board of Education (School District), to an amendment to the Illinois Property Tax Code, by way of Public Act 97-1161, which provided a real property tax exemption on leasehold interests and improvements on land leased from the Metropolitan Airport Authority of Rock Island County to fixed based operators (FBOs) providing aeronautical services.

¶ 2     The trial court denied the School District's motion for summary judgment and granted the summary judgment motion of the intervening-defendant, Elliot Aviation, Inc., a private company that received a property tax exemption as a result of the amendment. The School District appealed, arguing that Public Act 97-1161 violates the Illinois Constitution, which prohibits: (1) "Special Legislation"; (2) property tax exemptions except for on certain specified property; and (3) non-uniform taxation upon real property. We reverse and remand with directions.

¶ 3                              FACTS
¶ 4     Public Act 97-1161 amended the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2014)) by providing an exemption from property taxes on leasehold interests and improvements at the Metropolitan Airport Authority of Rock Island County for FBOs providing aeronautical services. Pub. Act 97-1161 (eff. June 1, 2013). Public Act 97-1161 added subsection (c) to section 15-160 of the Property Tax Code, as follows:

    "If property of the Metropolitan Airport Authority of Rock Island County is leased to a fixed base operator that provides aeronautical services to the public, then those

- 2 -

leasehold interests and any improvements thereon are exempt." 35 ILCS 200/15-160(c) (West 2014).

¶ 5        Public Act 97-1161 also amended section 9-195 of the Property Tax Code to provide as follows:

"(a) Except as provided in Sections 15-35, 15-55, 15-60, 15-100, 15-103, 15-160, and 15-185, when property which is exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the property taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his or her assignee." 35 ILCS 200/9-195 (West 2014).

¶ 6        At the time the amendments were passed, the Metropolitan Airport Authority of Rock Island County leased property to the for-profit FBO, Elliot Aviation, Inc. (Elliot Aviation). Elliot Aviation was the only FBO leasing property from the Metropolitan Airport Authority of Rock Island County. Prior to the amendment, Elliot Aviation was subject to real property taxation of $150,000 per year to the School District.

¶ 7        According to legislative history, the purpose of Public Act 97-1161 was to eliminate property taxes for Elliot Aviation as an incentive for Elliot Aviation to expand in Illinois, which would create jobs and substantial economic growth, instead of expanding in Nebraska, Missouri or Iowa where FBOs did not pay property taxes. 97th Ill. Gen. Assem., House Proceedings, Mar. 29, 2012, at 137, 140 (statements of Representative Verschoore). A representative in opposition of the bill stated:

"[G]iving economic incentives to businesses is what this state ought to be doing more of, but it ought to be done on a level playing field. *** This, I believe, would be unprecedented to be able to do this and it's an exemption for one but *** everyone else's property tax would increase. I don't think that's the best way that we should be looking at businesses to give one business that's already established that's already making that investment [an exemption] and increasing everyone else's taxes." 97th Ill. Gen. Assem., House Proceedings, Mar. 29, 2012, at 138 (statements of Representative Franks).

¶ 8        The legislative history also indicated that the Taxpayers Federation was opposed to the bill based on the belief that the bill would give a break to a specific company at the expense of everyone else, which would cause a tax shift to other properties. 97th Ill. Gen. Assem., House Proceedings, Mar. 29, 2012, at 139 (statements of Representative Sullivan). The sponsoring representative responded that Elliot Aviation entered into an agreement with the county and would pay the county some taxes. 97th Ill. Gen. Assem., House Proceedings, Mar. 29, 2012, at 139 (statements of Representative Verschoore).

¶ 9        The proposed bill returned to the Illinois House of Representatives from the Illinois Senate with a Senate amendment adding the Lansing Municipal Airport. An exchange between representatives indicated that the sponsoring representative wanted to return the bill to original language presented in House Bill 4110 because there was an objection to adding the extra airport "from people higher up than [him]." 97th Ill. Gen. Assem., House Proceedings, Aug. 17, 2012, at 3-4 (statements of Representative Verschoore). On February 1, 2013, Public Act 97-1161 was signed into law and was to become effective on June 1, 2013.

¶ 10        On March 27, 2013, the School District filed a complaint for an injunction and declaratory relief, challenging the constitutionality of Public Act 97-1161 and naming as defendants the

Governor, the Illinois Department of Revenue, the Rock Island County Board of Review, the Rock Island County Chief County Assessor, the Blackhawk Township Assessor, and the Coal Valley Township Assessor. The School District alleged that it would suffer irreparable harm from the diversion of property taxes as a result of the anticipated tax exemption. On May 10, 2013, the trial court granted a preliminary injunction in favor of the School District.

¶ 11  On July 16, 2013, the School District filed a motion for summary judgment, with supporting memorandum, seeking an order: (1) declaring Public Act 97-1161 unconstitutional; and (2) permanently enjoining the defendants from enforcing Public Act 97-1161. On September 5, 2013, Elliot Aviation was granted leave to intervene and filed a response and cross-motion for summary judgment.

¶ 12  In its response and motion for summary judgment, Elliot Aviation argued that it was a 76-year-old family business that employed 229 people at its Moline location. Elliot Aviation also had locations in Des Moines, Iowa, and Minneapolis, Minnesota. General aviation aircraft (those aircraft not operated by commercial airlines, large charters, or military) rely on FBOs to provide fuel, the use of hangars, pilot resting areas, weather briefings, flight planning, aircraft maintenance, and other services because the airport does not provide services to general aviation aircraft. The Metropolitan Airport Authority leased property to Elliot Aviation. Elliot Aviation constructed buildings on the property and agreed to transfer the buildings to the Metropolitan Authority as a "gift." Elliot Aviation anticipated expanding and would take into account property taxes as a significant factor in deciding where to expand. In Iowa, Elliot Aviation does not pay property taxes. Elliot Aviation's competitors in Michigan and Nebraska do not pay property taxes as the result of tax exemptions in those states. Public Act 97-1161 allowed Elliot Aviation to effectively compete in the marketplace and expand its operations, which would eventually generate jobs and provide a significant economic benefit in the area.

¶ 13  On December 11, 2013, in support of its motion for summary judgment, the School District argued that the property tax exemption was improper because there were 20 airport authorities in Illinois and the legislation singled out only one business or FBO for a property tax exemption while other similarly situated entities were not provided the same benefit. The School District argued that although Elliot Aviation claimed that tax exemption would allow it to provide economic growth and job creation, the language of the legislation did not tie the exemption to those goals. The School District claimed that it received 60% of the amount that should be collected from FBO terminals and, as a result of the legislation, it would suffer a $150,000 loss, or more if additional FBOs were created or if Elliot Aviation expanded in the future.

¶ 14  Elliot Aviation argued that the statute was presumed constitutional. Elliot Aviation also argued that it was uniquely situated because: (1) the Davenport airport in Iowa was located only minutes away; (2) it had the option of expanding in Illinois or at its location in Des Moines, Iowa; and (3) there was no evidence that other FBOs in Illinois were located on the border of the state and had the same unique situation as Elliot Aviation in regard to its location near the border and its intent to expand.

¶ 15  The trial court found the amendments to the Property Tax Code were proposed in an effort to incentivize Elliot Aviation to expand its operations in Illinois. The trial court found that the amendments did not violate the Special Legislation Clause because "nothing in [that clause] bars the legislature from enacting a law specifically addressing the conditions of an entity that is uniquely situated," noting that the Rock Island airport in Illinois was located minutes from

- 4 -

the Davenport Municipal Airport in Iowa. The trial court found that the School District failed to show that other FBOs in Illinois were similarly situated to Elliot Aviation. The School District filed a motion to reconsider, which the trial court denied. The School District appealed.

¶ 16                                    ANALYSIS

¶ 17    On appeal, the School District argues that the trial court erred in denying its motion for summary judgment and granting the summary judgment motion of Elliot Aviation because the amendments to the Property Tax Code contained in Public Act 97-1161 are unconstitutional. Specifically, the School District argues that the property tax exemptions to FBOs leasing property from the Metropolitan Airport Authority of Rock Island County violates the following three clauses of the Illinois Constitution: (1) the "Special Legislation" clause of article IV, section 13; (2) the prohibition on real property tax exemptions except for property belonging to certain specified entities as set forth in article IX, section 6; and (3) the uniformity clause of article IX, section 4(a). Ill. Const. 1970, art. IV, § 13; art. IX, §§ 6, 4(a).

¶ 18    Summary judgment is appropriate where the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). We review cases involving summary judgment *de novo. Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 146 (2003). The trial court's finding that a statute is constitutional is also reviewed *de novo. Id.*

¶ 19    We first address the special legislation argument. Plaintiff argues that the amendments are special legislation because other FBOs at other bordering airports, other Rock Island employers, and other Illinois employers do not enjoy the same tax exemption status. Elliot Aviation argues that statutes are presumed to be constitutional and that trial court was correct in finding that: (1) the School District did not carry its burden in demonstrating that a FBO in Rock Island was similarly situated with other FBOs in the state; (2) Elliot Aviation was uniquely situated; (3) the School District failed to prove the statute was arbitrary; and (4) the statute passes the rational basis test. Elliot Aviation argues that it was uniquely situated in that no other FBO in the state had the opportunity to expand into a state that does not tax leasehold interests (Iowa).

¶ 20    We begin our analysis with the presumption that all statutes are constitutional. *Id.* Statutes carry a strong presumption of constitutionality and the party that challenges the constitutionality of a statute has the burden of rebutting that presumption and "clearly establishing" the statute's unconstitutionality. (Internal quotation marks omitted.) *Id.*

¶ 21    The "Special Legislation" clause of the Illinois Constitution provides:

"The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13.

¶ 22    The special legislation clause expressly prohibits the General Assembly from conferring a special benefit or exclusive privilege on a person or group of persons to the exclusion of others similarly situated. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 391 (1997). The purpose of the special legislation clause is to prevent arbitrary legislative classifications that discriminate in favor of a select group without a sound, reasonable basis. *Id.* Delegates to the 1870 constitutional convention criticized special legislation as enriching particular classes of people

at the expense of others. *Id.* at 392 (quoting I Debates and Proceedings of the Constitutional Convention of the State of Illinois 578 (remarks of Delegate Anderson)). "Governments were not made to make the 'rich richer and the poor poorer,' nor to advance the interest of the few against the many; but that the weak might be protected from the will of the strong; that the poor might enjoy the same rights with the rich; that one species of property might be as free as another–that one class or interest should not flourish by the aid of government, whilst another is oppressed with all the burdens." (Internal quotation marks omitted.) *Id.*

¶ 23    There are two requisite elements to a successful special legislation challenge: (1) the statutory classification at issue discriminates in favor of a select group; and (2) the classification is arbitrary. *Board of Education of Peoria School District No. 150 v. Peoria Federation of Support Staff, Security/Policeman's Benevolent & Protective Ass'n Unit No. 114*, 2013 IL 114853, ¶ 23. The constitution does not prohibit all legislative classifications, and we review classifications that do not involve a fundamental right or suspect class under the rational basis test. *Best*, 179 Ill. 2d at 394 (providing that where a public act does not affect a fundamental right or suspect or quasi-suspect classification, the appropriate standard of review is the rational basis test). Under the rational basis test a statutory classification will be upheld if it is rationally related to a legitimate state interest. *Id.*

¶ 24    Here, as to the first element of a special legislation challenge, there is no question that the legislation at issue in this case discriminates in favor of FBOs leasing property from the Metropolitan Airport Authority of Rock Island County. The parties dispute the second element–whether such a classification is rationally related to the legitimate state interest of economic growth and job creation. We hold that it is not.

¶ 25    As written, the statutory amendments give a property tax break to Elliot Aviation and any future FBOs who lease property from the Metropolitan Airport Authority. The classification is arbitrary in that there is no justification for singling out these particular for-profit businesses over other businesses in Illinois or other FBOs in Illinois. The legislation allows $150,000, or more, to be taken away from the School District, which can presumably lead to job losses within the school district, and allows Elliot Aviation to keep that money. We note the other exempted entities listed in section 9-195 of Property Tax Code are provided for government entities, schools, or public uses or purposes, whereas this exemption is provided to for-profit businesses.

¶ 26    The legislation is based on speculation that Elliot Aviation will reinvest the money it saves in property taxes in such a way to create jobs and economic growth in Illinois. However, Elliot Aviation is not required to do so and there is no adequate justification or connection to the purpose of the statute for the arbitrary application to FBOs leasing property from the Metropolitan Airport Authority of Rock Island County when we can similarly speculate that giving a tax break to any company or Illinois FBO would allow that company to expand and create more jobs in Illinois. This legislation makes Elliot Aviation, or any future FBO leasing property from the Metropolitan Airport Authority of Rock Island County, richer while other similarly situated businesses do not receive the tax exemption and are obligated to continue paying property taxes.

¶ 27    Elliot Aviation argues that the trial court was correct in finding that it was "uniquely situated" based on its location near the border of a state with no property taxes and its available options to expand at locations out of state. By its terms, the special legislation prohibition in article IV, section 13 of our constitution only prohibits passage of a special law when " 'a

general law is or can be made applicable.' " *Big Sky Excavating, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221, 237 (2005) (quoting Ill. Const. 1970, art. IV, § 13). However, where an entity is uniquely situated, our constitution does not bar the General Assembly from enacting a law tailored to address the conditions presented by that unique situation. *Id.*

¶ 28　　　Elliot Aviation's "uniquely situated" argument fails for two reasons. First, the statute was not tailored so as to address the conditions of Elliot Aviation's "unique" situation because any future FBO that leases property from the Metropolitan Airport Authority of Rock Island County would also be exempt from property taxes. We find that future FBOs leasing property from the Metropolitan Airport Authority of Rock Island County are not uniquely situated just by reason of their location near the Iowa border. Second, the fact that Elliot Aviation is located in a state that requires it to pay property taxes while other states do not require leaseholds to pay property taxes is not unique to Elliot Aviation. Other FBOs in Illinois, and other businesses in Illinois, are similarly situated in that they also have out-of-state competitors that do not have to pay property taxes on their leaseholds. The fact that Elliot Aviation was contemplating an expansion out of state does not change our conclusion that it is similarly situated to other FBOs and businesses in Illinois who have to compete in the market with companies whose home states do not require property taxes.

¶ 29　　　While economic growth and job creation are important state interests, we are compelled to hold that Public Act 97-1161, as written, is unconstitutional special legislation that arbitrarily discriminates in favor of a select group–FBOs leasing property from the Metropolitan Airport Authority of Rock Island County. It is certainly laudable for the State to seek out economic benefits and employment opportunities for its citizens, but our constitution prohibits its attempt at doing so in Public Act 97-1161.

¶ 30　　　Consequently, we reverse the circuit court's rulings on the parties' motions for summary judgment. We remand this cause for further proceedings consistent with this opinion and direct the circuit court to enter an order granting summary judgment in favor of the School District, to address the School District's request for permanent injunction, and to deny Elliot Aviation's request for summary judgment.

¶ 31　　　Because we find that Public Act 97-1161 violates the special legislation clause of the Illinois Constitution, we need not reach the School District's remaining constitutional arguments.

¶ 32　　　　　　　　　　　　　　　　　　　CONCLUSION

¶ 33　　　The judgments of the circuit court of Rock Island County are reversed, and we remand this cause with directions.

¶ 34　　　Reversed and remanded with directions.