# Illinois Official Reports

## Supreme Court

---

### *Moline School District No. 40 Board of Education v. Quinn*, 2016 IL 119704

---

| | |
|---|---|
| Caption in Supreme Court: | MOLINE SCHOOL DISTRICT NO. 40 BOARD OF EDUCATION, Appellee, v. PATRICK QUINN, Governor, State of Illinois, *et al.* (Elliott Aviation, Inc., Appellant). |
| Docket No. | 119704 |
| Filed | June 16, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Rock Island County; the Hon. Frank R. Fuhr, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Robert V.P. Waterman, Jr., and Jason J. O'Rourke, of Lane & Waterman LLP, of Davenport, Iowa, for appellant. |
| | Patrick J. Hanlon, of Hanlon & Vinson LLP, and Floyd D. Perkins and Seth A. Horvath, of Nixon Peabody LLP, all of Chicago, and Daniel Churchill and Mark D. Churchill, of Moline, for appellee. |
| Justices | JUSTICE KARMEIER delivered the judgment of the court, with opinion. |
| | Chief Justice Garman and Justices Freeman, Thomas, Kilbride, and Burke concurred in the judgment and opinion. |
| | Justice Theis dissented, with opinion. |

**OPINION**

¶ 1    At issue on this appeal is the constitutionality of Public Act 97-1161 (eff. June 1, 2013), which amended the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2014)) to create an exemption from property taxes on leasehold interests and improvements on real estate owned by the Metropolitan Airport Authority of Rock Island County and used by a so-called fixed base operator (FBO) to provide aeronautical services to the public. When the law was enacted, there was only one FBO leasing land from the Metropolitan Airport Authority, Elliott Aviation, Inc. The new law was specifically designed to provide a financial incentive for that particular company to expand its operations at the Metropolitan Airport Authority's facilities rather than its operations in Des Moines, Iowa, which were not subject to property tax.

¶ 2    Moline School District No. 40 Board of Education (the School District), which faced losing more than $150,000 per year in tax revenue as a result of the exemption for Elliott Aviation, brought an action for declaratory and injunctive relief in the circuit court of Rock Island County to block implementation of the new law on the grounds that it violates various provisions of the Illinois Constitution, including the "special legislation" clause of article IV, section 13 (Ill. Const. 1970, art. IV, § 13). On cross-motions for summary judgment, the circuit court rejected the School District's challenge to the law and concluded that it is constitutional. The appellate court reversed and remanded with directions, holding that the law contravenes the article IV, section 13 prohibition against special legislation. 2015 IL App (3d) 140535. Elliott Aviation appealed to our court as a matter of right. Ill. S. Ct. R. 317 (eff. July 1, 2006). For the reasons that follow, we affirm the appellate court's judgment.

¶ 3                              BACKGROUND

¶ 4    Elliott Aviation is what is known in the aviation industry as a fixed based operator, or FBO. FBOs are commercial businesses allowed to operate at airports for the purpose of supplying support services to general aviation aircraft, *i.e.*, those not operated by commercial airlines, large charters, or the military, and to the pilots and passengers of such aircraft. Typical services provided by FBOs include fueling, hangaring, aircraft maintenance and repair, aircraft rental, restrooms, rest areas, and facilities for conferences and flight planning. Numerous FBOs operate in the State of Illinois, which is home to 19 other airport authorities in addition to the Metropolitan Airport Authority of Rock Island County (the MAA).

¶ 5    Elliott Aviation was founded in the 1930s and has three FBO operations in the Midwest: Moline, Illinois; Des Moines, Iowa; and Minneapolis, Minnesota. The Moline location, which has 229 employees, is located on the grounds of the Quad City International Airport (Quad City). Elliott Aviation does not own either the land or the buildings where it conducts its business there, although it paid for the buildings to be constructed. Both the real estate and the improvements are owned by the MAA, which leases them to the company. Although the MAA itself is not required to pay property tax, Illinois has assessed property taxes on airport property leased to FBOs, and Elliott Aviation has been required to pay property tax on the FBO it operates at the Quad City airport in Moline.

¶ 6    Several years ago, Elliott Aviation made known its interest in expanding its operations, either in Moline or at its Des Moines, Iowa, location. Cost was a factor, and one difference

between these two possible options was that the company's leasehold interests in its Iowa location were not subject to real estate taxes.

¶ 7       An economic impact analysis conducted by the Quad Cities Chamber of Commerce indicated that expansion at the Moline facility could be expected to create numerous new high-paying jobs and bring millions of dollars in revenue into Rock Island County. To provide an incentive for Elliott Aviation to pursue the Moline option, the Chamber of Commerce asked a local state legislator to support legislation that would exempt the company's leasehold interests at the Quad City airport from property tax. The result was House Bill 4110. That legislation was ultimately enacted into law as Public Act 97-1161, the legislation challenged in this case. It amended the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2014)) to provide, in pertinent part, that "[i]f property of the Metropolitan Airport Authority of Rock Island County is leased to a fixed base operator that provides aeronautical services to the public, then those leasehold interests and any improvements thereon are exempt [from taxation]." 35 ILCS 200/15-160(c) (West 2014).

¶ 8       Legislative debates on House Bill 4110 were clear and unambiguous as to the law's purpose: to provide property tax relief for Elliott Aviation so that it would have an incentive to expand its operations at the Moline location, rather than at a location in Iowa or some other state, and thereby improve the local economy. See 97th Ill. Gen. Assem., House Proceedings, Mar. 29, 2012, at 135-42. Equally clear was that the General Assembly did not want to extend the same property tax relief to any other operator at any other Illinois airport. An effort was made to amend the legislation to extend the same favorable tax treatment to FBO leases at the Lansing Municipal Airport in Cook County, but that effort was rebuffed. When House Bill 4110 was signed into law by the Governor as Public Act 97-1161, it benefited a solitary company, Elliott Aviation, at a single airport, Quad City in Moline.

¶ 9       Prior to enactment of Public Act 97-1161, Elliott Aviation's annual property tax bill included more than $150,000 per year for Moline School District No. 40. With passage of the new law and creation of the new exemption, the School District faced losing all of that tax revenue. Because there was no sunset provision in the law, the loss would be recurrent and permanent.

¶ 10      The School District, which felt that it could ill afford the loss in revenue, responded by filing an action in the circuit court of Rock Island County to have the law declared unconstitutional and to enjoin its enforcement. Named as defendants were numerous governmental entities and officials, including the Governor, the Director of Revenue, and the local tax authorities.

¶ 11      The School District's complaint contained four counts. Count I alleged that Public Act 97-1161 violates the special legislation clause of the Illinois Constitution, which prohibits the General Assembly from passing a "special or local law when a general law is or can be made applicable." Ill. Const. 1970, art. IV, § 13. Count II sought to have the law invalidated on the grounds that it violates article I, section 2, of the Illinois Constitution, which provides that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Ill. Const. 1970, art. I, § 2. Count III asserted that the statute is fatally infirm because it offends the requirement in our State's constitution that "[e]xcept as otherwise provided in this Section, taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law." Ill. Const.

1970, art. IX, § 4(a). Finally, count IV alleged that the statute was invalid and could not be enforced because it was incompatible with the requirement in article IX, section 6, of the Illinois Constitution of 1970 that "[t]he General Assembly by law may exempt from taxation only the property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes." Ill. Const. 1970, art. IX, § 6.

¶ 12    The law was set to take effect on June 1, 2013. Before that date arrived, however, the School District sought and obtained a preliminary injunction to block the statute's implementation pending final resolution of the case. Shortly thereafter, the School District filed a motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2014)). At this point, Elliott Aviation, which had not yet been named a party, was granted leave to intervene. It objected to the School District's summary judgment motion and filed its own cross-motion for summary judgment. Following a hearing, the circuit court entered a detailed order which rejected each of the School District's constitutional challenges to Public Act 97-1161, found the statute to be constitutional, denied the School District's motion for summary judgment, granted Elliott Aviation's cross-motion for summary judgment, and dissolved the preliminary injunction it had previously entered.

¶ 13    After unsuccessfully seeking reconsideration by the circuit court, the School District appealed. In a published opinion, the appellate court unanimously concluded that Public Act 97-1161 violated the article IV, section 13 prohibition against special legislation (Ill. Const. 1970, art. IV, § 13). It therefore reversed the circuit court's judgment and remanded with instructions for the circuit court to enter summary judgment in favor of the School District, to deny Elliott Aviation's motion for summary judgment, and to address the School District's request for permanent injunctive relief. Because it found the statute to be unconstitutional under article IV, section 13 (Ill. Const. 1970, art. IV, § 13), the appellate court had no need to reach and did not address whether the statute was also fatally infirm under the other constitutional provisions invoked by the School District. 2015 IL App (3d) 140535, ¶¶ 30-31. The matter is now before us for review on Elliott Aviation's appeal as a matter of right pursuant to Illinois Supreme Court Rule 317 (eff. July 1, 2006).

¶ 14                                      ANALYSIS
¶ 15    The sole issue on this appeal is whether the appellate court erred when it concluded that Public Act 97-1161 is unconstitutional. The constitutionality of a statute is a question of law that we review *de novo*. *Empress Casino Joliet Corp. v. Giannoulias*, 231 Ill. 2d 62, 69 (2008). *De novo* review is also appropriate here because the case was decided through summary judgment. *Pielet v. Pielet*, 2012 IL 112064, ¶ 30.

¶ 16    In undertaking our review, we begin with the familiar principle that statutes carry a strong presumption of constitutionality. A party claiming that a statute is unconstitutional bears the burden of establishing the statute's constitutional infirmity. This court has a duty to uphold the constitutionality of a statute if it is reasonably possible to do so. *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 148-49 (2006).

¶ 17    As noted earlier, the appellate court invalidated Public Act 97-1161 on the grounds that it violated article IV, section 13, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 13), popularly known as the special legislation clause. That provision states:

"The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13.

¶ 18 The special legislation clause prohibits the General Assembly from conferring a special benefit or privilege upon one person or group of persons and excluding others that are similarly situated. *Big Sky Excavating, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221, 235 (2005). Its purpose, as we have consistently held, is to prevent arbitrary legislative classifications that discriminate in favor of a select group without a sound, reasonable basis. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 391 (1997).

¶ 19 The clause has deep roots in our constitutional jurisprudence. It originally appeared in the nineteenth century in response to the General Assembly's past abuse of the legislative process through the grant of special charters for various economic interests. It is predicated in part on the conviction that governments should establish and enforce general principles applicable to all their citizens and not enrich particular classes of individuals at the expense of others, that "one class or interest should not flourish by the aid of government, whilst another is oppressed with all the burdens." *Id.* at 391-92 (quoting I Debates and Proceedings of the Constitutional Convention of the State of Illinois 578 (statements of Delegate Anderson)).

¶ 20 The first version of the special legislation clause was set forth in section 22 of article IV of the 1870 Constitution (Ill. Const. 1870, art. IV, § 22). That version contained an extensive list of specific categories in which the General Assembly was prohibited from passing a local or special law. While section 22 was in effect, the General Assembly was generally the final authority for determining whether a general law could be made applicable. When the 1970 Constitution was adopted, that list was eliminated. The substantive principles applicable to the prohibition against special legislation remain unchanged, but now, the issue of "whether a general law is or can be made applicable is specifically provided to be a matter for judicial determination." *In re Belmont Fire Protection District*, 111 Ill. 2d 373, 378 (1986).

¶ 21 What constitutes a general law and what constitutes a special law was recently revisited by this court in *Board of Education of Peoria School District No. 150 v. Peoria Federation of Support Staff, Security/Policeman's Benevolent & Protective Ass'n Unit No. 114*, 2013 IL 114853. Referencing past precedent, we noted in that case that laws are considered "general" "when alike in their operation upon all persons in like situation" and that they are "special" if they impose a particular burden or confer a special right, privilege, or immunity upon only a portion of the people of our state. (Internal quotation marks omitted.) *Id.* ¶ 48.

¶ 22 Article IV, section 13, of the Illinois Constitution (Ill. Const. 1970, art. IV, § 13) does not impose a blanket prohibition on all special laws. By its terms, it only prohibits the passage of a "special or local law when a general law is or can be made applicable." (Internal quotation marks omitted.) *Board of Education of Peoria School District No. 150*, 2013 IL 114853, ¶ 55; *Elementary School District 159 v. Schiller*, 221 Ill. 2d at 154. Accordingly, a law does not automatically run afoul of the prohibition against special legislation merely because it affects only one class of entities and not another. Rather, the statute must confer on a person, entity, or class of persons or entities a special benefit or exclusive privilege that is denied to others who are similarly situated. *Big Sky Excavating, Inc.*, 217 Ill. 2d at 236. If an entity is *uniquely* situated, the special legislation clause will not bar the legislature from enacting a law tailored

specifically to address the conditions of that particular entity. *Board of Education of Peoria School District No. 150*, 2013 IL 114853, ¶ 55.

¶ 23    In assessing whether a statute violates the prohibition against special legislation, courts apply a two-part analysis. First, they must determine whether the statutory classification at issue discriminates in favor of a select group. If it does, then they must go on to consider whether the classification is arbitrary. *Big Sky Excavating, Inc.*, 217 Ill. 2d at 235.

¶ 24    A special legislation challenge is generally judged under the same standards applicable to an equal protection challenge. If a law does not affect fundamental rights or make a suspect classification, and there is no contention that Public Act 97-1161 does, the appropriate measure of its constitutionality is the rational basis test, which asks whether the statutory classification is rationally related to a legitimate state interest. *Crusius v. Illinois Gaming Board*, 216 Ill. 2d 315, 325 (2005). "The judgments made by the legislature in crafting a statute are not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Big Sky Excavating, Inc.*, 217 Ill. 2d at 240. "If any set of facts can be reasonably conceived that justify distinguishing the class to which the statute applies from the class to which the statute is inapplicable, then the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may enact laws applicable only to those persons or objects." *Id.* at 238.

¶ 25    Public Act 97-1161, the law challenged in this case, clearly discriminates in favor of a select group, as the appellate court correctly held. 2015 IL App (3d) 140535, ¶ 24. By its terms, the law provides property tax relief only for FBOs providing aeronautical services to the public at the MAA's Quad City International Airport, and there is only one of those, Elliott Aviation. No other FBO providing aeronautical services to the public at any other Illinois airport was given similar favorable treatment, and, under the law, no other FBO providing aeronautical services to the public at any other Illinois airport has the opportunity to ever obtain similar tax treatment.

¶ 26    The real question in this case centers on the second step of the special legislation inquiry: whether the classification granting preferential tax treatment to FBOs leasing property from the MAA is arbitrary, *i.e.*, whether it is rationally related to a legitimate state interest. The appellate court concluded that it is not. *Id.* ¶¶ 25-29. We agree.

¶ 27    The justification for the tax exemption conferred by Public Act 97-1161 was clear and specific: it was to induce Elliott Aviation to undertake its contemplated expansion in Illinois rather than in Iowa in the hope that the expansion would create additional jobs and thereby boost the local economy in Rock Island County. Encouraging Illinois businesses to expand in Illinois and facilitating economic growth of our communities are unquestionably legitimate functions of state government. As the appellate court correctly pointed out (*id.* ¶ 26), however, there was no requirement in the law that Elliott Aviation actually use the tax savings to expand in Illinois. If the statute were allowed to take effect, the company would be entirely free to devote the money it saved on taxes to any purpose it chose, including expanding in Iowa. That is good news for Elliott Aviation. It is not necessarily such good news for anyone else. If the company elected not to reinvest in Rock Island County, the residents of the county would not merely fail to realize the hoped-for economic benefits, they could actually be harmed. That is so because the School District would either have to curtail its operations to absorb the lost tax

revenue or else the other taxpayers in the county would have to pay more to make up for the loss.

¶ 28    Of course, the fact that a law might be ill-conceived does not, in itself, create a constitutional problem for us to fix, for whether a statute is wise and whether it is the best means to achieve the desired result are matters for the legislature, not the courts. *Crusius v. Illinois Gaming Board*, 216 Ill. 2d at 332. The problem here, however, goes beyond that. In terms of our constitution's prohibition against special legislation, the real flaw in Public Act 97-1161's tax exemption for FBOs leasing space from the MAA is not that there is no assurance that the law will ever achieve its purpose. Rather, it is that there is no reasonable basis for limiting the tax incentives to this particular type of business at this particular facility in this particular part of the state.

¶ 29    Elliott Aviation depicts its circumstances as unique. They are not. Illinois has many municipal airport authorities and numerous FBOs, including FBOs like Elliott Aviation that operate near other states with a more favorable tax environment. They, too, would stand to benefit from tax incentives. Indeed, the same could be said of every other Illinois business throughout the state.

¶ 30    Elliott Aviation is an established enterprise which has no intention of moving or curtailing its operations in Rock Island County, so the availability of aeronautical services at the Quad City airport is not at risk. The company has, of course, expressed a desire to expand, but there is certainly nothing remarkable about that. The desire for expansion is a hallmark of for-profit businesses.

¶ 31    In upholding the law, the circuit court noted that Elliott Aviation's operations in Moline are minutes away from another airport in Davenport, Iowa. The court did not explain the relevance of this point, and we see none. Davenport is not the alternate Iowa location where Elliott Aviation was considering expansion. The record shows that Elliott Aviation's Iowa facility is in Des Moines. Moreover, as we have just observed, many other Illinois businesses operate in geographical proximity to competitors and potential competitors in other states, and many Illinois businesses compete with companies headquartered in states where the tax climate may be more favorable.

¶ 32    The potential economic benefits to Rock Island County are undeniable, but nothing before us suggests that there is any particular set of economic circumstances in that county that does not exist elsewhere or that would warrant special property tax incentives for its businesses. Many parts of Illinois have suffered in the wake of the recent recession and were already suffering before that. All would benefit from economic investment and job growth of the type touted by the Quad Cities Chamber of Commerce when it first proposed this legislation.

¶ 33    There was discussion on the floor of the Illinois House in response to the Senate's unsuccessful attempt to extend the tax break to a second airport, but it does not point us to a rational basis for the law's narrow reach either. During the discussion, the legislation's primary sponsor, Representative Verschoore, stated:

>         "[Senate Amendments 1 and 2] added another airport to this land-based lease. I tried to pass this for the Quad City Airport only and when it went to the Senate, they added the Lansing Airport. And so, what I'm trying to do is get it back to the original Bill where it includes just the Quad City Metropolitan Airport."

This exchange followed:

"[Representative] Franks: What's your objection to adding the extra one?

[Representative] Verschoore: Well, there was objection from people higher up than me…

Franks: Oh.

Verschoore: …so I guess that's my objection.

Franks: I get it. Okay. Well, thank you." (Internal quotation marks omitted.) 97th Ill. Gen. Assem., House Proceedings, Aug. 17, 2012, at 3-4.

¶ 34 Elliott Aviation speculates that the "higher ups" referenced by Representative Verschoore (whoever those might have been) had perfectly good and legitimate reasons for granting special treatment for FBOs leasing property from the MAA in Rock Island County and not extending the same benefit to anyone else, anywhere else. Based on Verschoore's vague and mildly ominous statements and Franks's responses ("Oh," "I get it"), however, it seems just as likely that the limited applicability of the proposed legislation resulted from purely political considerations wholly unrelated to the bill's purposes or effects.

¶ 35 In sum, based upon what is before us, we do not see and cannot reasonably conceive of anything that would justify distinguishing FBOs operating at the Quad City airport from any number of other FBOs at other Illinois airports or, indeed, from other Illinois businesses that operate on our borders or compete with companies in more tax-friendly jurisdictions, for purposes of property tax liability. To the contrary, the law presents a paradigm of an arbitrary legislative classification not founded on any substantial difference of situation or condition. Under article IV, section 13, of our constitution (Ill. Const. 1970, art. IV, § 13), arbitrary statutory classifications that discriminate in favor of a select group without a sound and reasonable basis are forbidden. *Allen v. Woodfield Chevrolet, Inc.*, 208 Ill. 2d 12, 21-22 (2003). The appellate court was therefore correct when it concluded that Public Act 97-1161 violates the special legislation clause of the Illinois Constitution and remanded the cause to the circuit court with directions.

¶ 36                                                                 CONCLUSION

¶ 37 For the foregoing reasons, the judgment of the appellate court is affirmed.

¶ 38 Affirmed.

¶ 39 JUSTICE THEIS, dissenting:

¶ 40 As the majority correctly notes, "statutes carry a strong presumption of constitutionality." *Supra* ¶ 16. A party challenging a statute bears a heavy burden of clearly establishing a constitutional violation, and this court owes a duty to uphold legislation when reasonably possible to do so. *Big Sky Excavating, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221, 234 (2005). In my view, the majority has paid only lip service to that duty by excusing the School District from carrying that burden.

¶ 41 Section 13 of article IV of the Illinois Constitution, the so-called special legislation clause, provides, "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13. When a statute is challenged under

that clause, our analysis is twofold. Initially, we must determine whether the classification created by the statute discriminates in favor of certain persons or entities. *Crusius v. Illinois Gaming Board*, 216 Ill. 2d 315, 325 (2005). If so, we must determine whether the classification is arbitrary. *Id.* The classification created by the Act is that fixed base operators (FBOs) at the Metropolitan Airport Authority of Rock Island (MAA) need not pay taxes on property leased from the MAA. The School District, as the party challenging the statute, was required to show that the classification discriminated in favor of FBOs at the MAA and that the classification was arbitrary. It failed to do either.

¶ 42　　Regarding the first part of our analysis, the special legislation clause (and its predecessor in the 1870 Illinois Constitution) is founded upon "the conviction that governments should establish and enforce general principles applicable to all their citizens and not enrich particular classes of individuals at the expense of others." *Supra* ¶ 19 (citing *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 391-92 (1997)). A general law applies to all persons and entities in the same situation; a special law does not. See *Board of Education of Peoria School District No. 150 v. Peoria Federation of Support Staff, Security/Policeman's Benevolent & Protective Ass'n Unit No. 114*, 2013 IL 114853, ¶ 48 (quoting *Bridgewater v. Hotz*, 51 Ill. 2d 103, 109 (1972)).

¶ 43　　The mere fact that a law affects only a single person or entity does not make it special and, therefore, invalid under the special legislation clause. *Big Sky Excavating*, 217 Ill. 2d at 235. The clause "prohibits the General Assembly from conferring a special benefit or privilege upon one person or group and excluding others that are similarly situated." *Crusius*, 216 Ill. 2d at 325. The majority even recognizes this: "If an entity is *uniquely* situated, the special legislation clause will not bar the legislature from enacting a law tailored specifically to address the conditions of that particular entity." (Emphasis in original.) *Supra* ¶ 22; *Peoria School District*, 2013 IL 114853, ¶ 55 ("Nothing in the constitution bars the legislature from enacting a law specifically addressing the conditions of an entity that is uniquely situated." (citing *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 154 (2006))); *Bridgewater*, 51 Ill. 2d at 109 (holding that the constitutional prohibition against special legislation "does not mean that every law shall affect alike every place and every person in the State but it does mean that it shall operate alike in all places and on all persons in the same condition").

¶ 44　　The procedural posture of this case does not affect the School District's burden but rather enhances it. This case comes before us after the appellate court reversed the trial court's decision to grant Elliott Aviation's motion for summary judgment. See 735 ILCS 5/2-1005 (West 2014). On that motion, Elliott Aviation bore the burden of persuasion, as well as the initial burden of production. Elliott Aviation could satisfy the latter burden either by presenting evidence that, if uncontroverted, would entitle the company to judgment as a matter of law on the School District's constitutional claim or by establishing that the School District lacked evidence to prove that claim. See *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 688-89 (2000) (citing *Purtill v. Hess*, 111 Ill. 2d 229, 240-41 (1986)). The School District then would bear the burden of production. The School District could satisfy that burden by presenting evidence to support its claim. *Id.* at 689. In this context, the evidence for both parties would relate to the threshold inquiry—whether Elliott Aviation was uniquely situated.

¶ 45　　Elliott Aviation's cross-motion for summary judgment had attachments, which indicated that the company was arguably in a unique situation. Elliott Aviation offered affidavits from

Greg Sahr, its president; Bruce Carter, the airport executive and director of aviation for the Quad City International Airport in Moline; and Tara Barney, the Quad Cities Chamber of Commerce's chief executive officer. Sahr's affidavit indicated that Iowa does not tax FBO leaseholds, while Illinois does. Sahr continued:

> "Growth in the general aviation field has caused a need for Elliott to expand and grow its operations. Elliott has an opportunity to significantly expand its business at either its Moline location or its location in [Des Moines,] Iowa or [Minneapolis,] Minnesota. One factor Elliott must consider in deciding where to expand its business is which location would be most financially beneficial. Property taxes are a significant factor in Elliott's expansion plans and prior to the passage of the Act, Elliott had considered expanding at one of the Company's other locations where such an exemption exists. A number of Elliott's key competitors are in states that have such an exemption including Iowa, Michigan and Nebraska. Moreover, Elliott competes nationally against competitors that are located in states that do not levy property taxes on FBOs."

¶ 46    According to Elliott Aviation, "Rock Island County is the only county in Illinois with a major airport that borders Iowa, which does not tax FBO leases at airports." Carter and Barney confirmed that Iowa does not tax FBO leaseholds. Barney added that, in her belief, the bill that became Public Act 97-1161 provided a significant incentive for the company to expand its operations in Moline.

¶ 47    In response, the School District presented very little. The School District's complaint seemed to assert that FBOs at the MAA are similar to other FBOs in Illinois simply because there are other FBOs in Illinois. The School District alleged that there are 20 FBOs in Illinois, including Elliott Aviation, but did not further identify or describe the 19 FBOs outside Rock Island, aside from mentioning one in Lansing.[1] The School District never alleged that any of those 19 FBOs purportedly doing business in this state lease property from other airport authorities and pay taxes on the leaseholds, that any of those FBOs plan to expand their businesses, or that any of those FBOs suffered from tax disadvantages *vis-à-vis* their cross-border competitors. Notably, the School District's complaint had no attachments.

¶ 48    The trial court, faced with the School District's weak and conclusory argument and Elliott Aviation's stronger and more supported argument, concluded that the School District had not carried its burden to present evidence that Elliott Aviation or other FBOs at the MAA are similarly situated with other FBOs across the state. According to the trial court, the evidence suggested instead that Elliott Aviation is uniquely situated due to its proximity to Iowa and its choice to expand its operations either there or in Illinois. The appellate court ignored that evidence and stated only that "as to the first element of a special legislation challenge, there is no question that the legislation at issue in this case discriminates in favor of FBOs leasing property from the Metropolitan Airport Authority." 2015 IL App (3d) 140535, ¶ 24.

¶ 49    The majority's holding is barely more in-depth than that of the appellate court:

---

[1]In its memorandum in support of its motion to reconsider below, the School District mentioned that two airport authorities—one in East Alton and one in Rockford—are located near borders with neighboring states but did not discuss whether FBOs lease property from those airport authorities.

"Public Act 97-1161, the law challenged in this case, clearly discriminates in favor of a select group, as the appellate court correctly held. 2015 IL App (3d) 140535, ¶ 24. By its terms, the law provides property tax relief only for FBOs providing aeronautical services to the public at the MAA's Quad City International Airport, and there is only one of those, Elliott Aviation. No other FBO providing aeronautical services to the public at any other Illinois airport was given similar favorable treatment ***." *Supra* ¶ 25.

¶ 50 The majority rejects Elliott Aviation's depiction of its circumstances as unique. According to the majority, "Illinois has many municipal airport authorities and numerous FBOs, including FBOs like Elliott Aviation that operate near other states with a more favorable tax environment." *Supra* ¶ 29. The majority seems to accept the unsupported allegation in the School District's complaint that there are other FBOs in Illinois, some of which conduct business at our borders. That is improper for two reasons.

¶ 51 First, the majority violates rules on judicial notice. See Ill. R. Evid. 201(b) (eff. Jan. 1, 2011); 735 ILCS 5/8-1001 (West 2014). Courts cannot take judicial notice of facts that are "doubtful or uncertain" (*Motion Picture Appeal Board v. S.K. Films*, 65 Ill. App. 3d 217, 226 (1978) (quoting *Sproul v. Springman*, 316 Ill. 271, 279 (1925))), and the School District's allegation is certainly both. A statement in its response brief before us is even more equivocal: "[T]he very nature of the business that airport authorities and FBOs serve—air service—clearly demonstrates that some, probably many, if not *all*, of the airport authorities and FBOs in Illinois compete across state borders." (Emphasis in original.) That statement, however, is not based on anything in the record, and it directly contradicts Sahr's affidavit, which indicates that one FBO, Elliott Aviation, does compete across a state border.

¶ 52 Second, the majority's assumption that there are other FBOs in Illinois, as well as other FBOs like Elliott Aviation, turns the presumption of constitutionality on its head. The majority ignores the School District's complete lack of any evidence about the 19 FBOs purportedly doing business in Illinois and effectively excuses the School District from presenting evidence relevant to the first half of our constitutional analysis. The majority compounds that mistake by accepting the School District's argument that FBOs at the MAA are not only like all other FBOs in Illinois but also like all other Illinois employers. *Supra* ¶ 29 (stating that "every other Illinois business throughout the state" would benefit from tax incentives like that in Public Act 97-1161). Apparently, the majority accepts the School District's argument, made in its motion to reconsider below, that even a statute creating a tax exemption for all FBOs across the state would be special legislation because all Illinois businesses are similarly situated.

¶ 53 An "every other Illinois business throughout the state" yardstick provides the wrong measure in special legislation cases. The legislature need not choose between a statute that governs all businesses or no statute at all. See *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 367 (1985). That is simply inconsistent with cases such as *Crusius*, *Big Sky Excavating*, and *Schiller*, where this court upheld statutes that benefitted a single person or entity. *Schiller* is particularly instructive.

¶ 54 In *Schiller*, the owner of a 160-acre parcel of farmland planned to develop the property as an upscale residential community. Although the property was in Cook County, it was across a road from the Village of Frankfort in Will County. The owner sought to have the property annexed into the Village, so that it would be a part of the Village's school districts, rather than

- 11 -

Cook County school districts. Senator Petka, whose district was near the property, proposed an amendment to an annexation bill that " 'takes care of a local concern in Will County' " and that would " 'solve a couple of school district issues *** also for a school district in Will County.' " *Schiller*, 221 Ill. 2d at 135 (quoting 90th Ill. Gen. Assem., Senate Proceedings, May 15, 1997, at 10; May 16, 1997, at 57-58 (statements of Senator Petka)). That amendment became section 7-2c of the School Code and provided that a portion of one school district may be attached to another adjacent school district, if certain conditions were met. 105 ILCS 5/7-2c (West 1998). Those conditions applied only to parcels of not more than 160 acres in Cook County and wholly within the boundaries of another school district, where the property owner had a pending annexation petition on the effective date of the statute—essentially, only to the owner's property. Pursuant to the statute, the owner filed a petition with the state school superintendent to attach the property to the Will County school districts. The superintendent agreed to do so.

¶ 55    Several school districts in both counties, as well as a resident of Cook County, filed an administrative review suit. One of the plaintiffs' arguments was that section 7-2c violated the special legislation clause. The trial court found the statute unconstitutional because it was enacted for the property owner " 'and no one else.' " *Schiller*, 221 Ill. 2d at 141. This court reversed. We agreed with the trial court that there was significant evidence in the record that the statute was intended solely to benefit the property owner. That, however, did not doom the legislation:

> "To contravene article IV, section 13, of our constitution, the statute must confer on a person, entity, or class of persons or entities a special benefit or exclusive privilege that is denied to others who are similarly situated. Thus, under the first part of the inquiry, we determine if another entity similarly situated to [the owner] was denied a privilege. This burden has been met in previous cases through evidence of other entities that would have been able to benefit from the legislative privilege, but for some limiting exclusionary provision." *Id.* at 151.

¶ 56    After reviewing our case law, we concluded that the plaintiffs failed to overcome the strong presumption of constitutionality with evidence that the benefit to the property owner was denied to any other similarly situated person or entity. *Id.* at 152. We noted that the plaintiffs did not claim that they were similarly situated to the owner; instead, they made a conclusory argument that the statute's requirement of a pending annexation petition on its effective date prevented owners of other property from effectuating a school district change. *Id.* The plaintiffs presented no evidence that other property owners "sought to convert their farmland into residential areas, desired the Village of Frankfort to annex their property, or additionally sought a school district boundary change." *Id.* at 153.

¶ 57    Like the plaintiffs in *Schiller*, the School District failed to present any evidence about the plans of supposedly similar entities. Our review is *de novo*, but we still must have something to review. Because the School District offered nothing to suggest that any of the 19 other FBOs purportedly doing business in Illinois are similarly situated to FBOs at the MAA, the School District failed to carry its burden on the first part of our special legislation analysis.

¶ 58    Even if the School District had shown Public Act 97-1161 discriminates in favor of FBOs at the MAA, it did not show that the Act is arbitrary. Regarding the second part of our constitutional analysis, where, as here, the classification does not involve a fundamental right

- 12 -

or a suspect group, it is judged by the rational basis standard. *Crusius*, 216 Ill. 2d at 325. Under the rational basis standard, the classification is not arbitrary if it is rationally related to a legitimate governmental interest. *Id.* That standard is highly deferential, and the classification will pass constitutional muster where any conceivable set of facts justifies it. *Big Sky Excavating*, 217 Ill. 2d at 238; *Chicago National League Ball Club*, 108 Ill. 2d at 369 ("if any state of facts can reasonably be conceived to sustain the classification, the existence of that state of facts at the time the statute was enacted must be assumed"); see also *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 124 (1998) ("[u]nder the rational basis test, the court may hypothesize reasons for the legislation, even if the reasoning advanced did not motivate the legislative action"). Elliott Aviation bore the initial burden to offer reasonably conceivable facts to support the legislature's decision to create a tax exemption for FBOs at the MAA. If it did so, the School District then bore the burden to show that no reasonably conceivable facts justified that decision.

¶ 59    In its memorandum in support of its cross-motion for summary judgment, Elliott Aviation explained that before the statute was enacted, the company weighed the pros and cons of expanding in Iowa and Illinois. The Quad Cities Chamber of Commerce issued an "economic impact summary," which showed that the expansion project would bring millions of dollars and hundreds of jobs to Rock Island County. That study, which was attached to Elliott Aviation's memorandum, concluded that a tax exemption for FBOs at the MAA would allow Illinois "to compete on a level playing field with the two states immediately to the West on the East-West flight corridor." Elliott Aviation stated that Representative Verschoore, the sponsor of Public Act 97-1161, mentioned that study in his debate comments and highlighted the expected benefits from the project. Representative Morthland, another supporter of the legislation, noted that it was intended "to facilitate an expansion that will provide much reward to the community."

¶ 60    The School District offered dual reasons why the statute was completely arbitrary. In its complaint, the School District alleged that unemployment was lower in Rock Island County than other counties in Illinois with airport authorities. The School District referred to statistics from the United States Department of Labor and the Federal Reserve Bank in St. Louis, which indicated that "the unemployment rate for the last five months of 2012 for counties within the State with airport authorities show there is no greater or special job needs in Rock Island." According to the School District, 18 counties had a monthly unemployment rate higher than Rock Island County during that time. The School District provided no citation for those statistics and did not state whether those counties are home to the other 19 FBOs purportedly doing business in Illinois and, if so, which ones. Again, the complaint had no attachments.

¶ 61    In its memorandum in support of its complaint, the School District changed course, arguing that a tax exemption for FBOs at the MAA is not rationally related to the Act's goals, job creation and economic development, because the Act does not directly create jobs and does not require an FBO at the MAA to create jobs before receiving the tax exemption. According to the School District, "The Act's affect [*sic*] on jobs is uncertain and remote." That effect became even more tenuous in the School District's memorandum in support of its own summary judgment motion, where the School District insisted, "The Act's affect [*sic*] on jobs is nonexistent." The School District added that "the Act does not directly create or fund jobs, nor does it require jobs be created for the exemptions to be created."

- 13 -

¶ 62     The appellate court focused upon the School District's retooled argument. The appellate court agreed with the School District that any link between a tax exemption for FBOs at the MAA and job creation or economic development was speculative because the statute did not require those FBOs to reinvest the money that they saved "in such a way to create jobs and economic growth in Illinois." 2015 IL App (3d) 140535, ¶ 26. More importantly, the appellate court refused to believe that the legislature had any reason for the classification in Public Act 97-1161, holding that "there is no justification for singling out these particular for-profit businesses over other businesses in Illinois or other FBOs in Illinois." *Id.* ¶ 25.

¶ 63     The majority acknowledges that "[e]ncouraging Illinois businesses to expand in Illinois and facilitating economic growth of our communities are unquestionably legitimate functions of state government." *Supra* ¶ 27. Like the appellate court, the majority observes that the statute does not require Elliott Aviation to use its tax savings to expand in Illinois. And like the appellate court, the majority identified a bigger problem with the statute. According to the majority, Public Act 97-1161's "real flaw" is that "there is no reasonable basis for limiting the tax incentives to this particular type of business at this particular facility in this particular part of the state." *Supra* ¶ 28.

¶ 64     The Illinois House voted 77-31 in favor of the bill that became Public Act 97-1161; the Senate voted 43-10 in favor of it. The majority's holding that there is no reasonable basis for the Act flies in the face of the decision by overwhelming and bipartisan majorities in both the House and Senate that there is a reasonable basis. The legislature may have believed that providing a tax exemption to FBOs at the MAA like Elliott Aviation, and thereby providing an incentive to those entities to expand there and not in a neighboring state, would lead to job creation and economic development. The legislature also may have believed that limiting the tax exemption as it did would mitigate any negative effects in other counties that are not home to FBOs with expansion plans.

¶ 65     We have long recognized that the legislature is free to make those types of judgments. "The legislature need not choose between legislating against all evils of the same kind or not legislating at all. Instead it may choose to address itself to what it perceives to be the most acute need." *Chicago National League Ball Club*, 108 Ill. 2d at 367; *cf. Friedman & Rochester, Ltd. v. Walsh*, 67 Ill. 2d 413, 421 (1977) ("The equal protection clauses of the State and Federal constitutions do not prohibit the legislature from pursuing a reform 'one step at a time,' or from applying a remedy to one selected phase of a field while neglecting the others."). As Representative Morthland put it in the debate on the bill that became Public Act 97-1161, "[D]oing a good thing on a broad scale doesn't preempt doing a good thing on a small scale." 97th Ill. Gen. Assem., House Proceedings, Mar. 29, 2012, at 140 (statements of Representative Morthland). Due to its superior investigative and fact-finding facilities, the General Assembly is far better suited than this court to balance the benefits of a tax incentive for a group of businesses in one county against detriments there and elsewhere.

¶ 66     The majority acknowledges that Elliott Aviation offered a reasonably conceivable explanation—or what the majority ironically labels "perfectly good and legitimate reasons"—for legislative leaders' decision to limit the applicability of the tax exemption in Public Act 97-1161. *Supra* ¶ 34. Contrary to our case law, the majority rejects that explanation and instead focuses upon Representative Verschoore's comment that the Lansing airport was omitted from Public Act 97-1161 after "objection from people higher up than me" and

- 14 -

Representative Franks's response of "I get it." (Internal quotation marks omitted.) *Supra* ¶¶ 33-34. The majority states that Verschoore's comment was "vague and mildly ominous" and asserts that limiting the Act to FBOs at the MAA was a result of "purely political considerations wholly unrelated to the bill's purposes or effects." *Supra* ¶ 34.

¶ 67     Impugning the motives of a legislator based on a single comment devoid of context is unnecessary. And suggesting that there is something untoward about a political branch using political considerations to frame legislation seems naïve. See *Mercy Crystal Lake Hospital & Medical Center v. Illinois Health Facilities & Services Review Board*, 2016 IL App (3d) 130947, ¶ 34. A distaste for the bargaining inherent in the legislative process is not a basis for striking down a statute. Our constitutional role does not involve critiquing the legislative process. See *Crusius*, 216 Ill. 2d at 332 ("It is not our place to second-guess the wisdom of a statute that is rationally related to a legitimate state interest ***."); *Shields v. Judges' Retirement System*, 204 Ill. 2d 488, 497 (2003) ("It is the dominion of the legislature to enact laws and it is the province of the courts to construe those laws.").

¶ 68     "Classifications drawn by the General Assembly are always presumed to be constitutionally valid, and all doubts will be resolved in favor of upholding them." *In re Petition of the Village of Vernon Hills*, 168 Ill. 2d 117, 122-23 (1995). Because the majority declines to demand that the School District clearly show that the classification in Public Act 97-1167 was unconstitutional and resolves those doubts in favor of striking down the statute, I dissent. I would remand this case to the appellate court for consideration of the School District's other constitutional claims.